420 A.2d 1325

Walter LASH, Appellant,

v.

WORKMEN'S COMPENSATION APPEAL BOARD and
General Battery Corporation, Appellee,

and

Richard JABLONSKI, Appellant,

v.

WORKMEN'S COMPENSATION APPEAL BOARD and
General Battery Corporation, Appellee.

Supreme Court of Pennsylvania.

Sept. 22, 1980.

Joseph Lurie, Philadelphia, for appellants.

Paul R. Ober, Reading, for appellee.

## OPINION

KAUFFMAN, Justice.

Walter Lash and Richard Jablonski appeal from an order of the Commonwealth Court affirming orders of the Workmen's Compensation Appeal Board denying compensation.[1] The sole issue presented is whether employees who have been required to handle lead daily during the course of their employment are entitled to an award of compensation for partial disability when they are involuntarily transferred to lower paying lead–free jobs because, due to their lead exposure, they have become lead absorbers.

Lash and Jablonski claim benefits under the Workmen's Compensation Act[2] ("Act") for partial disability resulting from the occupational disease of lead poisoning contracted in the course of their employment. For the reasons which follow, we reverse the order of the Commonwealth Court and remand for computation of benefits.[3]

The facts are not in dispute. Appellants are employees of appellee General Battery Corporation ("General Battery"), a manufacturer of lead lined batteries. For approximately eight years, Lash and Jablonski held positions which required their daily exposure to the hazards of lead handling. Well aware of the risks involved in such exposure, General Battery, much to its credit, periodically tested its employees in lead hazard positions to determine the lead content of their blood.

1. Appellants originally brought separate claims, both of which were rejected by the Referee and by the Workmen's Compensation Appeal Board. On appeal to the Commonwealth Court, their cases were consolidated pursuant to stipulation. *See* Pa.R.A.P. 513.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1 *et seq.*

3. Jurisdiction is exercised pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 724(a).

In 1975, General Battery removed Lash and Jablonski to lower paying non–lead hazard positions "as a preventive matter" on the recommendation of the company physician, Dr. M. Wasserwig, because they had become "lead absorbers," i. e., they had begun to absorb lead into their bloodstreams at an abnormally high rate, making further lead exposure hazardous. Because these positions were less remunerative than their former lead–hazard positions, appellants sought occupational disease benefits.

The Referee concluded as a matter of law that appellants had failed to prove by sufficient competent evidence (1) that they sustained a work related injury or occupational disease within the meaning of the Act and (2) that they were partially disabled due to a work related injury or occupational disease.[4] Although it expressly recognized that appellants had become absorbers of lead by reason of their immediate exposure thereto in their work and therefore were no longer permitted by their employer to work in lead exposed areas, thereby suffering a reduction in wages, the Workmen's Compensation Appeal Board affirmed the Referee. The Commonwealth Court agreed that benefits properly had been denied.[5]

Lash and Jablonski involuntarily were removed by General Battery from the lead–hazard jobs they had performed for approximately eight years because they had become "lead absorbers" and repeatedly showed elevated lead–blood levels. Such action was "preventive" since continued exposure undoubtedly would have caused appellants to become seriously ill. Fortunately, General Battery's concern for the physical well–being of its employees, as evidenced by its practice of periodically testing them for elevated blood–lead levels, spared appellants from progressing to the advanced

**4.** Section 301(c) of the Act defines "injury" to include the occupational diseases enumerated in section 108(a) of the Act. 77 P.S. § 411. Section 108(a) defines "occupational disease" to include "[p]oisoning by ... lead ... in any occupation involving direct contact with, handling thereof, or exposure thereto." 77 P.S. § 27.1.

**5.** *Lash and Jablonski v. Workmen's Compensation Appeal Board*, 30 Pa.Cmwlth. 124, 372 A.2d 1265 (1977).

stages of lead poisoning. The fact remains, however, that appellants no longer could work safely in jobs which brought them into contact with lead, and consequently they were forced to accept substantially less remunerative positions in low–lead areas. That appellants' health had not yet deteriorated to the advanced stages of lead poisoning does not mean that they were not suffering from a compensable injury. They both had become absorbers of lead as a direct result of their job–related exposure to lead for a period of at least eight years; the amount of lead in their bodies had reached dangerous levels; and, as recognized by General Battery's own physician, continued exposure would have been perilous. To require appellants to remain exposed until the advanced stages of lead poisoning had in fact been inflicted upon them in order to qualify for partial disability benefits would be unconscionable.

In *Globe Union, Inc. v. Baker*, 310 A.2d 883 (Del.Super. 1973), *aff'd per curiam*, 317 A.2d 26 (Del.Supr.1974), on facts virtually identical to those here, benefits for partial disability were allowed. There, the injured employees were exposed to lead during the manufacture of automobile batteries, and upon discovery of a high lead content in their blood, they were transferred to departments with low lead exposure and suffered a partial loss of wages. In allowing recovery for partial disability during the entire period they were forced to work in the low lead areas, the court stated:

The claimants were found to have suffered from the initial stages of chronic lead poisoning. Subsequently, they were transferred to less remunerative work in low lead areas. It would be contrary to public policy and the purposes of our Workmen's Compensation Act to hold, as suggested by [their employer] on appeal, that the claimants were not entitled to partial disability because even with their illness they were physically capable of continuing to work in the high led areas at increasing peril to their health. *The law does not require, as a prerequisite to recovering compensation for partial disability due to a*

*compensable occupational disease, that the ill employee continue to work until he becomes physically unable to do so.*

310 A.2d at 888 (emphasis supplied).

This Commonwealth has long endorsed the strong public policy of compensating employees who suffer injury and become disabled, totally or partially, in the course of their employment. *See Workmen's Compensation Appeal Board v. Overmyer Mold Co.*, 473 Pa. 369, 374 A.2d 689 (1977); *Staller v. Staller*, 343 Pa. 86, 21 A.2d 16 (1941); *Associated Hospital Services of Phila. v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d 1332 (1979); *Plasteel Products Corp. v. Workmen's Compensation Appeal Board*, 32 Pa.Cmwlth. 405, 379 A.2d 908 (1977); *Taylor v. Ewing*, 166 Pa.Super. 21, 70 A.2d 456 (1950); Barbieri, Pennsylvania Workmen's Compensation, Vol. 1 §§ 2.00 *et seq.* It would be barbaric to require an employee to continue in a position where he is exposed to a toxic substance until he is so ill that he physically is incapable of performing his job. We have held that "[i]n the interpretation of the Workmen's Compensation Act, 77 P.S. § 1 *et seq.*, the word "disability is to be regarded as synonymous with "loss of earning power." *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 12, 104 A.2d 104, 107 (1954), and that the Act must be construed liberally to effectuate the underlying public policy. *Workmen's Compensation Appeal Board v. Overmyer Mold Co., supra; Plasteel Products Corp. v. Workmen's Compensation Appeal Board, supra; General Tire and Rubber Company v. Workmen's Compensation Appeal Board*, 16 Pa.Cmwlth. 473, 332 A.2d 867 (1975). Having become abnormally fast absorbers of lead after eight years of job related exposure, appellants suffered a loss of earning power when they were forced to accept lower–salaried non–lead hazard positions. Accordingly, they are entitled to an award of partial disability benefits.

The order of the Commonwealth Court is reversed and the case remanded for computation of benefits.