Josephine M. Gregorious, Petitioner *v.* Workmen's Compensation Appeal Board (European Health Spas), Respondents.

European Health Spas and Insurance Company of North America, Petitioners *v.* Workmen's Compensation Appeal Board (Gregorious), Respondents.

Submitted on briefs November 13, 1984, to Judges ROGERS, CRAIG and PALLADINO, sitting as a panel of three.

*Patrick F. McArdle, McArdle, Caroselli, Spagnolli & Beachler,* for petitioner/respondent, Joseph M. Gregorious.

*Raymond F. Keisling, Will & Keisling,* for respondent/petitioner, European Health Spas.

OPINION BY JUDGE CRAIG, January 17, 1985:

Josephine Gregorius[1] appeals an order of the Workmen's Compensation Appeal Board which reversed the referee's grant of benefits based on its determination that Ms. Gregorius failed to meet her burden of proving that disability involving her hands is compensable under section 108(n) of The Pennsyl-

---

[1] The appeal filed at No. 3263 C.D. 1982 incorrectly captioned the petitioner's name as Gregorious.

vania Workmen's Compensation Act,[2] 77 P.S. §27.-1(n), which requires proof that the incidence of the occupational disability is substantially greater in the claimant's industry than elsewhere in society. Ms. Gregorius argues that her disability is compensable under section 108(i) of the Act, which does not impose the burden of establishing "substantially greater incidence."

Hence, the pivotal issue is whether Ms. Gregorius' disability, initially diagnosed as contact dermatitis caused by exposure to cleaning fluids, should be considered for compensation under section 108(n) of the Act, or under section 108(i), which provide:

The term "occupational disease" as used in this act, shall mean only the following diseases.

. . . .

(i) Infection or inflammation of the skin due to oils, cutting compounds, lubricants, dust, liquids, fumes, gases or vapor, in any occupation involving direct contact with, handling thereof, or exposure thereto.

. . . .

(n) All other occupational diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are peculiar to the industry or occupation, and (3) which are not common to the general population.

The record establishes that, on March 30, 1976, Josephine Gregorius scrubbed the inside of a swimming pool with muriatic acid in the course of her employment as a locker room attendant at European Health Spa. Ms. Gregorius testified that her hands

---

[2] The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1066.

were itchy for approximately two months after scrubbing the pool, and that later they began to sting. During that time, Ms. Gregorius continued to work at the spa, which required her to come into contact with other chemicals. In October, 1976, Ms. Gregorius consulted her general practitioner, Dr. Baczkowski, who testified that at that time, her hands were swollen, exhibited a red rash, and "were actually bleeding and oozing serum."

Dr. Baczkowski referred Ms. Gregorius to a dermatologist, Dr. Carnegie, who examined her on November 8, 1976, and diagnosed her condition as contact dermatitis, but noted a suspicion of "some underlying problems such as scleroderma . . . ." Dr. Carnegie prescribed several creams, and saw Ms. Gregorius again on December 14, 1976, and April 4, 1977. By that time, the superficial problems with her hands had cleared up to the point of no longer requiring active treatment, although Dr. Carnegie recommended that she avoid contact with irritant materials.

Ms. Gregorius filed her claim petition in February, 1977. After three board remands and four referee decisions in favor of the claimant, the board finally reversed the referee by order dated November 26, 1982. In so doing, the board stated that this case is controlled by *Cook v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 487, 415 A.2d 1021 (1980), where the court held that a claimant suffering from contact dermatitis as a result of work-related exposure to nickel must satisfy the requirements of section 108(n) of the Workmen's Compensation Act, the catch-all provision which requires proof that the disability occurs with "substantially greater incidence" in the claimant's industry.

However, *Cook* is distinguishable because it involved exposure to metal, rather than a liquid chem-

ical, as here. Liquids, but not metals, are listed in section 108(i) as materials which a claimant's exposure to and resulting disability from may be compensable. Although "contact dermatitis" is not specifically enumerated in section 108, we agree with petitioner's argument that where, as here, contact dermatitis is caused by exposure to a liquid, the compensability of that disability should be determined under section 108(i) of the Act insofar as it is an "infection or inflammation of the skin due to . . . liquids . . . in [an] occupation involving direct contact with, handling thereof, or exposure thereto."

Nevertheless, our review of the record does not reveal substantial evidence that Ms. Gregorius is totally disabled, as the referee found, from the contact dermatitis. In his report, Dr. Carnegie stated that, after the dermatitis had cleared up, Ms. Gregorius continued to complain of swelling and soreness in her fingers, and that she consulted with Dr. Munoz, who diagnosed her condition as rheumatoid arthritis. Dr. Carnegie concurred in that diagnosis, based on his April 4, 1977 examination of Ms. Gregorius.

The record also contains the deposition of Dr. Eric Minde who examined Ms. Gregorius on July 14, 1977, and agreed with Dr. Munoz's diagnosis of rheumatoid arthritis. Dr. Minde testified that when he examined Ms. Gregorius, the dermatitis had cleared up completely, and that there was no relationship between the previous dermatitis and her current arthritic condition.[3]

---

[3] Dr. Minde testified:

A I determined she had rheumatoid arthitis. This would not be a condition caused by exposure to industrial chemicals. I considered her to be disabled, but not due to work-related exposure or injury. She did not have any continuing deficit at the time I saw her, which would be due to

Ms. Gregorius introduced the report of Dr. Steck, whose statement, that the work-related exposure to the chemicals "possibly" caused Ms. Gregorius' problems, did not evince the requisite element of unequivocality.[4] *Greenwald v. Workmen's Compensation Appeal Board,* 61 Pa. Commonwealth Ct. 34, 432 A.2d 1133 (1981).

However, Dr. Baczkowski testified that "a real causative agent exposure that she went through when she scrubbed that pool . . . is the whole cause of her trouble."

Although the record thus does contain unequivocal evidence that Ms. Gregorius' work-related exposure

---

industrial exposure. She would be able to work using gloves if it weren't for this other non-related arthritic condition.

Q What was her condition relative to her dermatitis at the time you saw her?

A It had cleared up completely.

Q Do you have any opinions within a reasonable degree of medical certainty of the relationship between the dermatitis and the rheumatoid arthritis?

A Yes. I feel I can state with reasonable medical certainty that there is no relationship between the contact dermatitis and rheumatoid arthritis.

[4] Dr. Steck stated:

Since there is no evidence to substantiate the suspicion of connective tissue disease, we have to assume that the redness and inflammation of the patient's hands comes from chronic irritation. She attributes these changes to her use of certain industrial acid and cleaning compounds. It is possible that these substances have caused this chronic irritation. No specific tests were done with any of these materials. One of the materials that the patient mentioned she worked with was muriatic acid (hydrochloric acid). Of course, it would not be reasonable to attempt to do allergy testing with a simple, caustic chemical such as this. Testing for primary irritation is always difficult and usually impossible to interpret and therefore no attempt was made to test for irritants.

was a cause of her contact dermatitis—at least in the above-stated testimony of Dr. Baczkowski—there is no substantial evidence that the dermatitis continued to be disabling. Consequently, the record does not support the referee's finding of a total and permanent work-related disability.

The claimant argues that, under *Lash v. Workmen's Compensation Appeal Board,* 491 Pa. 294, 420 A.2d 1325 (1980), her inability to return to her job at the European Health Spa resulted in a loss of earning power which is equivalent to a partial disability. However, in *Lash,* where the claimants' work-related exposure to lead had resulted in absorption of lead into their bloodstreams, the employer transferred the claimants to lower paying positions which would not involve further exposure to lead. Here, the record includes doctors' recommendations that the claimant avoid contact with irritant materials, but does not contain any evidence that following that recommendation has resulted in a loss of earning power. The lack of such evidence in the record is not surprising because the claimant is raising this partial disability claim for the first time on appeal. All of the administrative proceedings addressed only the question of total disability, and the referee's four awards were all for total and permanent disability. Of course, we cannot consider any issue not presented to the compensation authorities, 2 Pa. C. S. §703(a), but are limited to a determination of whether claimant's constitutional rights were violated, an error of law committed or findings of fact are not supported by substantial evidence. 2 Pa. C. S. §704.

We conclude that the board erred in applying section 108(n) rather than section 108(i) of the Workmen's Compensation Act, but that substantial evidence

does not support an award of compensation for total disability under either section.

Accordingly, we affirm[5] the board's reversal of the referee's award of benefits.[6]

ORDER

Now, January 17, 1985, the order of the Workmen's Compensation Appeal Board at A-82701, entered November 26, 1982, is affirmed.

---

[5] On appeal, Commonwealth Court will sustain a decision which reached the correct result, although the analysis was erroneous. *In re: Nomination Certificate of Luzerne County Democratic Executive Committee*, 62 Pa. Commonwealth Ct. 277, 436 A.2d 263 (1981).

[6] Our disposition of this case makes it unnecessary to address the precautionary cross-appeal filed by European Health Spas.