**Dolores FINK, Petitioner,**

v.

**WORKMEN'S COMPENSATION AP-PEAL BOARD (WALBRIDGE COR-PORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1996.
Decided June 26, 1996.

Barbara E. Holmes, for Petitioner.

Mark Gordon, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Dolores Fink (claimant) appeals from an order of the Workmen's Compensation Appeal Board which affirmed the decision of a workers' compensation judge (WCJ) denying her claim petition for benefits under section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act).[1] We reverse.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1). Section 301(c)(1) of the Act states, in pertinent part:

(1) The terms "injury" and "personal injury", as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally re-

Claimant was employed by Walbridge Corporation (employer) for sixteen years as a porcelain spray enamel painter. On April 26, 1990, she began experiencing severe chest pain and breathing difficulty. As a result, she contacted her family physician. She was advised to go to the St. Clair Hospital emergency room where she was treated, given prescriptions and released.

On April 30, 1990, claimant returned to work and advised her supervisory personnel that her condition was possibly work related. On and after May 7, 1990, claimant began to experience breathing difficulty again, and after May 9, 1990, she worked an average of four hours per day. Claimant became unable to work for employer on May 16, 1990.

On November 13, 1990, she filed a claim petition for the receipt of workers' compensation benefits. On November 27, 1990, the petition was assigned to a WCJ.

On January 21, 1994, after hearings and the submission of evidence, the WCJ issued a decision denying claimant's claim petition for benefits. In the decision, the WCJ made the following relevant findings of fact:

1. [Claimant] filed a claim petition against [employer] and its workers' compensation insurance carrier ... alleging she sustained a work related injury while in the course of her employment with [employer] as a porcelain enamel spray painter. More specifically, claimant alleges that as a result of exposure to paint fumes on April 26, 1990, she became temporarily and totally disabled as of May 16, 1990; and that her disability has continued to the present, with some modification as a result of subsequent employment. [Employer] filed a timely, responsive answer denying the material petition allegations.

2. Claimant credibly testified that on April 26, 1990 she began experiencing

sults from the injury or is aggravated, reactivated or accelerated by the injury ... The term "injury arising in the course of his employment", as used in this article ... shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon....

Section 301(c)(1) was amended in 1993, subsequent to the filing of the instant claim petition.

severe chest pain and breathing difficulty. She contacted her family doctor and was advised to go to the St. Clair Hospital emergency room, where she was treated, given prescriptions and released.

3. Claimant returned to work on April 30, 1990 and that week advised supervisory personnel that her condition was possibly work related.... Subsequent follow-up with her family doctor led to a referral to David A. Celko, M.D. At the time of his testimony on her behalf, Dr. Celko was board certified in internal medicine and board eligible in pulmonary disease.

4. On and after May 7, 1990 claimant again began experiencing breathing difficulty, and after May 9th she worked an average of four hours per day. She last worked for [employer] on May 16, 1990. Claimant's testimony infers she was released for health reasons, given approximately ten days vacation pay and never called back to work. At the time of her initial testimony she had obtained part-time employment elsewhere....

5. At the request of [employer], claimant was examined on December 31, 1990 by Murray Sachs, M.D., who is board certified in internal medicine with a subspecialty in pulmonary medicine. At the time of his testimony he was director of Shadyside Hospital's pulmonary division and respiratory services, and teaching pulmonary medicine to medical students.

6. The undersigned finds the medical evidence of record supports the [employer]'s denial of the claim, finding the following, *inter alia*, significant in that regard:

A. The record clearly shows that claimant has a history of severe chronic obstructive pulmonary disease secondary to cigarette smoking and bronchial asthma. The asthma is intrinsic, i.e., it is allergic and the source of the condition is unknown. Dr. Sachs further found the presence of emphysema, also secondary to her smoking habit.

B. Dr. Celko, who first examined claimant on May 23, 1990 or seven days after the alleged onset of disability, further opined claimant was disabled from performing her job duties as a spray painter as a result of her bronchial asthma. He prescribed no specific medication and in his follow-up visit of June 6, 1990, did not start her on any specific therapy. After that, she was asymptomatic.

C. Drs. Celko and Sachs agree that although the April 26, 1990 work incident aggravated her underlying condition, she was not impaired for more than seven days and completely recovered from its residual effect.

D. Claimant conceded she has a history of being a heavy smoker and breathing difficulty.... (Dr. Sachs found her to have a 40 to 60 pack year smoking history.) She advised the physicians that she had experienced shortness of breath for three years and chest pain for two years prior to the alleged injury incident.

E. Both doctors agree that claimant should not return to her job as a porcelain enamel spray painter, not because of her work exposure, but rather because it would exacerbate her underlying, non-work related chronic obstructive lung disease, secondary to her smoking history.

7. It is found as fact that although claimant sustained a work related injury on April 26, 1990 in the nature of an aggravation of her underlying chronic obstructive lung disease as a result of exposure to paint fumes, she completely recovered from the effects of the injury within seven days; furthermore, that any residual disability present after the seven days elapsed was a result of her underlying condition; and therefore claimant has not sustained a compensable injury.

WCJ Decision, pp. 2–4.

Based on the foregoing, the WCJ made the following relevant conclusions of law:

2. Claimant has failed to meet her burden of proving that she sustained a compensable work related injury on April 26, 1990; more specifically that the

aggravation of her underlying condition continued for a period exceeding seven days.

On February 1, 1994, claimant filed an appeal of the WCJ's decision with the board. On September 13, 1994, the board issued an order affirming the WCJ's decision. The board's opinion in support of its order states, in pertinent part, that:

> If Claimant has a pre-existing condition which is aggravated by her work causing disability but the aggravation totally resolves so that Claimant is no worse than before the aggravation except Claimant cannot return to the same work conditions, her benefits are not appropriate.... The logic behind this rule of law is that Claimant's work has nothing to do with Claimant's inability to work or limitation in what Claimant can do. The problem lies solely with Claimant's pre-existing condition. Claimant's pre-existing condition prevents Claimant from doing the work she did with [employer].

Board Opinion, p. 2. Claimant then filed the instant appeal.

The sole issue presented in the instant appeal is whether the board erred in affirming the WCJ's decision denying the award of workers' compensation benefits because claimant has failed to show that she sustained a compensable work related injury.

■ Our scope of review in a workers' compensation matter is limited to determining whether there has been a constitutional violation, errors of law committed, or a violation of appeal board procedures, and whether necessary finding of fact are supported by substantial evidence. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

■ A claimant who is alleging disability based on the aggravation of a pre-existing condition is entitled to workers' compensation benefits if she shows: (1) that the injury, or aggravation, arose in the course of employment; and (2) that the injury, or aggravation, was related to that employment. *Knapp v. Workmen's Compensation Appeal Board (GTE)*, 671 A.2d 258 (Pa.Cmwlth.

1996); *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle)*, 146 Pa.Cmwlth. 320, 605 A.2d 478 (1992); *Cox v. Workmen's Compensation Appeal Board (Brookville Glove Manufacturing)*, 144 Pa.Cmwlth.147, 601 A.2d 404 (1991).

■ To show that an injury was related to employment, the claimant must establish a causal connection between work and the disabling injury. *Povanda*. Therefore, where there is no obvious causal connection between the injury, *i.e.*, the aggravation, and the alleged work-related cause, unequivocal medical testimony is required to establish the causal connection. *Knapp*.

■ As we noted in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa. Cmwlth.202, 465 A.2d 132, 134, 135 (1983):

> The phrase "unequivocal medical testimony" is a shorthand term lawyers and courts have devised and used for the rule of the common law, brought over to the field of workmen's compensation, to the effect that one contending that a condition of disability is the result of injury arising in the course of employment must, unless the disability is clearly the result of a work injury, produce the expert medical testimony that the claimant's condition in the expert's professional opinion did come from the work experience....

Certainly, it is not the law, as it has been sometimes argued, that every utterance which escapes the lips of a medical witness on a medical subject, must be certain, positive, and without reservation, exception or peradventure of a doubt. We repeat, that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as

the witness does not recant the opinion or belief first expressed.

In addition, unlike credibility determinations, the question of whether medical testimony is equivocal or not is a question of competency and, thus, a conclusion of law fully reviewable by this court. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800 (1985).

■ In this case, both claimant and employer introduced unequivocal medical evidence to be considered by the WCJ. Based on this evidence, the WCJ found that claimant has a history of severe chronic obstructive pulmonary disease and emphysema secondary to cigarette smoking, and bronchial asthma which is an allergic condition with an unknown source. The WCJ also found that the April 26, 1990 work incident aggravated claimant's underlying condition, but she was not impaired for more than seven days and she completely recovered from its residual effect. Finally, the WCJ also found that claimant should not return to her job as a porcelain enamel spray painter, not because of her work exposure, but rather because it would exacerbate her underlying, non-work related condition.

The WCJ concluded that although claimant sustained a work related injury, *i.e.*, the aggravation of her underlying condition due to her exposure to paint fumes, she had recovered from the effects of the injury within seven days and any residual disability was attributable to her underlying condition. As a result, the WCJ concluded that claimant had not sustained a compensable injury.

The board affirmed this decision stating that where a claimant's disability is caused by the aggravation of a preexisting condition, but the aggravation completely resolves, benefits are not appropriate even though the claimant cannot return to the same work conditions. We do not agree.

■ This Commonwealth has long endorsed the strong public policy of compensating employees who suffer injury and become disabled, totally or partially, in the course of their employment. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass)*, 515 Pa. 315, 528 A.2d 580 (1987); *Lash v. Workmen's Compensation Appeal Board*, 491 Pa. 294, 420 A.2d 1325 (1980). In interpreting the Act, the word "disability" is to be regarded as synonymous with "loss of earning power". *Lash.*

■ In *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987), the claimant worked in a position which required him to periodically clean and sterilize tanks with a solution containing chlorine. The claimant was also exposed to the fumes of other chemical agents such as caustic soda and sulfuric acid in the course of a work day. The claimant had asthma, and this ailment was aggravated by the chemical fumes he encountered in the course of his employment. In *Pawlosky*, the Court noted:

In the instant case the medical evidence showed, and the referee found, that the claimant had become totally disabled by the effect of chemical fumes at his workplace on his pre-existent asthmatic or pulmonary disease. According to the medical evidence from both parties those fumes aggravated or irritated the claimant's condition and, with each exposure, would produce an adverse physiological reaction called a bronchospasm, during which he would undergo difficulty in breathing. Given the nature of a bronchospasm, each instance in which such an attack was caused by the chemical fumes would constitute an "injury"... for purposes of the Act. That is, the claimant's inhalation of the chemical fumes would bring about an adverse and hurtful change in his system; and such change would cause him to suffer a lessened facility in the natural use of a bodily activity or capability, *i.e.*, breathing. We therefore hold that the adverse effect of the chemical fumes on the claimant's pre-existent asthmatic condition constituted an "injury" within the meaning of section 301(c)(1) of the Act.

*Pawlosky*, 514 Pa. at 461–62, 525 A.2d at 1210–11. Thus, the work related aggravation of a non-work related preexisting condition is a compensable "injury" under the Act. *Id. See also Knapp; Povanda; Cox.*

■ Moreover, the disappearance of the symptoms resulting from an aggravation of a claimant's preexisting condition will not bar

the award of worker's compensation benefits if the symptoms would reappear upon her return to her former position. *Farquhar; Knapp; Cox.* As the Pennsylvania Supreme Court stated in *Farquhar:*

> Equally incredible is the conclusion of the lower tribunals that, because [claimant]'s symptoms had disappeared ... and her condition had "normalized," she was not totally disabled and could not, therefore, recover compensation. This conclusion is absurd, and flies in the face of the substantive law. *Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968), firmly established that a claimant need not be so crippled or diseased as to be helpless in order to qualify for workmen's compensation; rather, it is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured. More recently, in *Lash v. WCAB, supra,* we upheld an award of compensation to claimants who had become "lead-absorbers" by virtue of their prolonged work-related exposure to lead, and faced a risk of lead poisoning if they continued to perform the same work; otherwise, the claimants had no symptoms or disabling injuries. Nevertheless we stated:
>
> > To require [claimants] to remain exposed until the advanced stages of lead poisoning had in fact been inflicted upon them in order to qualify for partial disability benefits *would be unconscionable.*
> >
> > \*    \*    \*    \*    \*    \*
> >
> > It would be barbaric to require an employee to continue in a position where he is exposed to a toxic substance *until he is so ill that he physically is incapable of performing his job.*

*Farquhar,* 515 Pa. at 329, 528 A.2d at 587 (emphasis in original). The court added "that 'Our law of Workers' Compensation does not require an employee to bear the risk of probable severe and totally disabling reinjury by return to heavy work on pain of foregoing all compensation.'" *Farquhar,* 515 Pa. at 330, 528 A.2d at 587.

In *Cox,* the claimant worked as a packer which required her to pack into boxes finished cotton gloves which her employer had manufactured. The claimant stopped reporting for work, and informed her employer that she was unable to work due to breathing difficulties resulting from her contact with cotton dust as she worked. Medical testimony indicated that the claimant had a preexisting condition of asthma which would result in difficulty in breathing when she was exposed to the offending agent at the workplace. The medical testimony also indicated that the difficulty would lessen when the claimant was not around the offending agent, and that she felt better on weekends or when she was away from the workplace. There was no indication of how long she suffered from the reaction while away from the workplace, or if any residual effects of her exposure persisted after she left the workplace. The medical testimony also indicated that she should not return to the work environment where she would be exposed to agents that would aggravate her preexisting condition of asthma.

On appeal to this court, the employer argued that benefits were inappropriate because the claimant showed no signs of any reaction or residual difficulties at the time she was examined by the physician who testified regarding her asthmatic condition. In rejecting this argument, we stated:

> Our Supreme Court ... has held that simply because a claimant's symptoms of her preexisting condition have disappeared, claimant is still entitled to workmen's compensation benefits for total disability when the symptoms would reappear upon claimant's return to her former position.... Even though Dr. Shively found no sign of asthma when he examined Claimant does not preclude Claimant from receiving benefits, because he unequivocally testified that based on her history and symptoms, she could not return to her former job because her preexisting condition of asthma would be aggravated.

*Cox,* 601 A.2d at 408, citing *Farquhar* and *Barrett. See also Knapp,* 671 A.2d at 261 ("[W]here a claimant's work-related aggravation symptoms of his preexisting condition have disappeared [because the claimant has been removed from the workplace], the **claimant may still seek total disability benefits on the basis that those aggrava-**

tion symptoms would most probably reappear upon the claimant's return to her former position.") (emphasis in original).

In this case, the unequivocal medical testimony establishes that claimant suffers from a preexisting condition which is aggravated by agents present in employer's workplace. In addition, this aggravation renders her unfit or unable to do the type of work she had been engaged in when she was injured. Thus, claimant has established that she sustained a compensable injury under section 301(c)(1) of the Act. *Pawlosky; Farquhar; Knapp; Povanda; Cox.*

■ Moreover, the fact that the symptoms of the aggravation of claimant's preexisting condition abate when she is removed from the workplace, does not preclude claimant's entitlement to worker's compensation benefits. *Farquhar; Knapp; Cox.* Because the unequivocal medical testimony shows that claimant's preexisting condition would be aggravated if she returned to her former position, we hold that the WCJ and the board erred in concluding that she is not entitled to workers' compensation benefits.

Employer contends that the Pennsylvania Supreme Court's decision in *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.)*, 541 Pa. 148, 661 A.2d 1355 (1995) compels a different result. We do not agree.

In *Markle*, the claimant suffered a work-related back injury while working for the employer. The claimant was subsequently released to restricted duty and returned to work without a loss of earning power. As a result, a supplemental agreement suspending his workers' compensation benefits was signed. The employer later transferred the claimant to another position which was within the restrictions for the claimant's work-related back injury. However, the claimant was unable to perform the duties of his new position due to a different non-work related condition, pulmonary emphysema. Accordingly, the claimant refused the transfer offered by the employer, and filed for the reinstatement of his workers' compensation benefits. The WCJ denied the claimant's reinstatement petition. The WCJ's decision

was affirmed by the board and, ultimately, this court.

The Pennsylvania Supreme Court granted allowance of appeal to consider the limited issue of whether, in meeting its burden of proof of job availability in a reinstatement hearing, an employer must consider preexisting medical restrictions which are unrelated to a claimant's work injury. The court held, *inter alia*, that preexisting non-work related physical limitations resulting from non-work related injuries should not be considered by a WCJ in determining whether an employer has met its burden of proof regarding job availability. *Markle*, 541 Pa. at 154, 661 A.2d at 1358.

In so holding, the court cited two decisions of our court to illustrate the rationale underlying its holding:

See *USX Corp. v. W.C.A.B. (Hems)*, 167 Pa.Commw. 19, 647 A.2d 605 (1994) (employer was not required to show job availability where claimant was unable to resume employment because of nonwork-related brain abscess rather than work-related thumb injury); *Carpentertown Coal & Coke v. W.C.A.B. (Seybert)*, 154 Pa.Commw. 408, 623 A.2d 955 (1995), appeal denied, 535 Pa. 640, 631 A.2d 1011 (1993) (employer was entitled to suspension of benefits, even though claimant had suffered permanent damage to heart muscle as a result of a work-related myocardial infarction, where inability to return to pre-injury job was not caused by damage to heart, [relating to the work related injury,] but rather was caused by preexisting coronary disease).

*Markle*, 541 Pa. at 155, 661 A.2d at 1358.

■ In contrast, in the instant case we are concerned with the award of benefits for a compensable injury arising in the course of employment, which is related to that employment. As noted by the Pennsylvania Supreme Court in *Markle*, "[a] workers' compensation claimant may only collect for those injuries arising out of his employment." *Markle*, 541 Pa. at 153, 661 A.2d at 1357. As stated *infra*, the work related aggravation of a non-work related preexisting condition is a work related injury and is compensable under the Act. *Pawlosky;*

*Knapp; Povanda; Cox.* The loss of earning power, or disability, in this case relates directly to the work related injury suffered by claimant. Thus, although preexisting non-work related conditions resulting from non-work related injuries are not relevant to an employer's demonstration of job availability under *Markle,* a work related aggravation of a preexisting non-work related condition is a work related injury, and the potential for future reinjury due to that preexisting condition supports a finding of disability under the Act. *Pawlosky; Knapp; Povanda; Cox.*[2]

Accordingly, the order of the board is reversed.

### ORDER

NOW, this 26th day of June, 1996, the order of the Workmen's Compensation Appeal Board, dated September 13, 1994, at No. A94–0229, is reversed.

COLINS, P.J., and SMITH, J., dissent.

PELLEGRINI, J., concurs in the result only.

---

2. Recently, in *Sachette v. Workmen's Compensation Appeal Board (St. Johnsbury Trucking Co.),* 672 A.2d 403 (Pa.Cmwlth.1996), a panel of this court considered, *inter alia,* whether, in the context of a termination petition, a claimant is no longer totally disabled where medical evidence shows that the claimant will risk recurrence of a work related injury should he return to work without restrictions. Initially, the panel noted that aggravation of a preexisting condition is a compensable injury under the Act. *Sachette,* 672 A.2d at 407. However, relying on *Markle,* the panel held that where the claimant had recovered from the work related aggravation of a preexisting condition, the claimant was not totally disabled where the medical testimony indicated that it was "very probable" or "very likely" that he may again aggravate his pre-existing condition should he return to his pre-injury job. *Sachette,* 672 A.2d at 408–409. As a result, the panel concluded that termination of the claimant's benefits was appropriate in that case. *Id.*

As noted above, the Pennsylvania Supreme Court has held that merely because a claimant's symptoms have disappeared and her condition has normalized, she may still be totally disabled and recover compensation; it is sufficient that her injury rendered her unfit to do the type of work she had been engaged in when injured. *Farquhar,* 515 Pa. at 330, 528 A.2d at 587. The court specifically held that the Act does not require an employee to bear the risk of probable severe and totally disabling reinjury by returning to work on pain of foregoing all compensation. *Id. See also Povanda,* 605 A.2d at 483 (same, quoting *Farquhar*); *Knapp,* 671 A.2d at 258 (A claimant may still seek total disability benefits on the basis that the aggravation symptoms would most probably reappear upon her return to her former position); *Cox,* 601 A.2d at 408 (Simply because a claimant's symptoms have disappeared, she is still entitled to total disability benefits when the symptoms would reappear upon her return to her former position). To the extent that our panel decision in *Sachette* conflicts with this opinion and the foregoing case law, it is expressly overruled.