**Nancy LITTLE, Petitioner**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (SELECT SPECIAL-
TY HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 9, 2015.
Decided March 25, 2015.

Ronald P. Carnevali, Jr., Johnstown, for petitioner.

Gregory Zohoranacky, Pittsburgh, for respondent.

BEFORE: DAN PELLEGRINI, President Judge and ROBERT SIMPSON, Judge and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge ROBERT SIMPSON.

Nancy Little (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed an order of a Workers' Compensation Judge (WCJ) granting Claimant's claim petition for a closed period. The WCJ determined Claimant suffered temporary periods of total disability as a result of occupational asthma caused by her work exposure to Di–Isocyanate, a chemical component of a floor wax product used by Select Specialty Hospital (First Employer). Claimant contends the WCJ erred in terminating her benefits on the basis that the acute effects of occupational exposure to Di–Isocyanate resolved. Claimant asserts she cannot return to her pre-injury job because of her ongoing sensitivity to

Di–Isocyanate and the risk of further asthma symptoms. Claimant maintains that as a consequence she continued to suffer a loss of earnings where her present, part-time position pays less than her pre-injury position. For the reasons that follow, we reverse and remand.

## I. Background

Claimant, a licensed registered nurse, performed nursing duties for First Employer, a long-term acute care facility, for a period of approximately four years prior to one day in late April 2010, when she began experiencing breathing difficulties. Claimant reported to her supervisor and then went directly to the emergency room at the Conemaugh Valley Memorial Hospital. There she received treatment with a nebulizer machine that assists with breathing in order to open up a patient's airways. Claimant's condition improved, and she returned to work after a couple of days.

While working as a charge nurse on May 27, 2010, Claimant again experienced sneezing and coughing. Claimant noticed a housekeeping employee waxing the floors. Claimant again advised her supervisor that she needed to go to the hospital emergency room. Claimant received three nebulizer treatments. Claimant also received intravenous steroid medication that decreases inflammation in order to improve breathing. Emergency room personnel referred Claimant for further treatment, including examinations by a pulmonologist, Dr. Jessica Bon (Pulmonologist). Claimant did not return to work until June 18, 2010.

On August 4, 2010, Claimant experienced a third episode with symptoms similar to the first two episodes. Claimant again received treatment in the emergency room. This time, Claimant's condition was worse than the prior episodes. Claimant again received three nebulizer treatments and other medications. However, Claimant did not return to work with First Employer.

First Employer initially issued a notice of compensation-payable (medical only, no loss of wages) describing Claimant's injury as an inflammation of her lungs resulting from "an allergic reaction to the floor wax." Reproduced Record (R.R.) at 77a. In October 2010, Claimant filed a claim petition alleging she experienced an allergic reaction to floor wax used in her place of employment. Claimant sought total disability for the time she missed work in May and June 2010, and total disability benefits following her last day of work in August 2010. In response, First Employer issued a notice of compensation denial. Thereafter, First Employer filed an answer denying the material allegations of the claim petition.

In November 2010, Claimant obtained a part-time position with Altoona Hospital (Second Employer). At her job interview, Claimant explained she left her job with First Employer because of her reaction to the floor wax First Employer used. Second Employer, which used the same product, immediately changed the floor wax it used. Thereafter, Claimant experienced no breathing problems while working for Second Employer.

Before the WCJ, Claimant testified on her own behalf and submitted a medical report from a toxicologist, Dr. Anthony F. Pizon (Toxicologist). In his report, Toxicologist stated (with emphasis added):

> I have had the pleasure of evaluating [Claimant] in the Medical Toxicology Clinic on October 5, 2010. My conclusions are based on my exam of [Claimant] and the history she provided. She also provided Material Safety Data Sheets on several chemicals used at your place of employment.

*[Claimant] clearly has occupationally-induced asthma from her exposure to Gloss–Tek 100 Part A. Gloss–Tek is used as a floor care product and contains di-isocyanates. The association between asthma induction and di-isocyanates is well known.*

R.R. at 74a.

The WCJ found Claimant's testimony credible and accepted Toxicologist's opinion as fact. *See* WCJ's Op., 1/03/12, Findings of Fact (F.F.) Nos. 6, 7. Thus, the WCJ found Claimant suffered a disabling work-related injury as a result of her exposure to Di–Isocyanate, a chemical in Gloss–Tek Part A, a floor care product used by First Employer. F.F. Nos. 4, 7.

Further, the WCJ noted, First Employer submitted a medical report from Dr. Steven Basheda (IME Physician), a pulmonologist who performed an independent medical examination (IME) of Claimant in February 2011. *See* F.F. No. 5. IME Physician examined Claimant, took her history and reviewed her medical records. *Id.* Ultimately, he agreed with the diagnosis of "occupational asthma secondary to [Di–Isocyanate]." R.R. at 102a. IME Physician also believed that Claimant's asthma was directly related to her work place exposures. *Id.*

Nonetheless, IME Physician opined, within a reasonable degree of medical certainty, that as of his February 23, 2011 examination, Claimant fully recovered from her work-related injury and had no pulmonary impairment or disability. F.F. No. 5; R.R. at 103a.

Consequently, the WCJ determined Claimant carried her burden of proving she sustained a compensable injury in May 2010 in the nature of occupationally-induced asthma as a result of her exposure to the chemical Di–Isocyanate. WCJ's Op., Conclusion of Law (C.L.) No. 1. To that end, the WCJ observed, the parties'

medical experts agreed that Claimant's exposure to Di–Isocyanate caused her disability. C.L. No. 2. Therefore, the WCJ awarded Claimant total disability benefits for the time she missed work starting with the first two incidents in April and May 2010, and from the third episode on August 4, 2010 until November 10, 2010, when she began working part-time for Second Employer. Thereafter, the WCJ awarded Claimant partial disability benefits until February 23, 2011, when IME Physician determined Claimant fully recovered with no residual disability or pulmonary impairment.

On appeal to the Board, Claimant argued the WCJ erred in terminating her benefits where she could not return to her pre-injury position with First Employer because of her asthma and her ongoing sensitivity to Di–Isocyanate, a chemical in Employer's floor wax. Consequently, Claimant maintained she still suffered a wage loss related to her work injury based on her lower paying part-time position with Second Employer.

The Board, however, denied Claimant's appeal. In so doing, the Board noted IME Physician credibly opined Claimant fully recovered from her work injury without any residual pulmonary impairment or disability. As support for its position, the Board cited *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 540 Pa. 482, 658 A.2d 766 (1995). In *Harle,* the Supreme Court concluded that an employee whose earning power is no longer affected by a work-related injury is no longer entitled to partial disability benefits even though his present wages do not equal his pre-injury wages as a result of a plant shutdown ending his pre-injury job.

Here, the Board reasoned, the evidence did not show Claimant suffered any residual impairment related to her work injury.

**4**

Therefore, because the WCJ determined Claimant's work injury fully resolved and her condition returned to baseline, a termination of benefits, rather than a suspension, was appropriate. *See* Bd. Op., 7/18/14, at 7. Claimant petitions for review.[1]

## II. Discussion

### A. Argument

Claimant contends the WCJ erred in terminating her benefits based on a finding that the acute effects of her occupational exposure to Di–Isocyanate resolved. Claimant asserts she is incapable of returning to her pre-injury position because of her allergic sensitivity to Di–Isocyanate, which results in a continuing loss of earnings.

Claimant essentially argues her allergic sensitivity to Di–Isocyanate prevents her from returning to her pre-injury job with First Employer. Therefore, she is entitled to partial disability benefits based on her reduced earnings with Second Employer. *See Davis v. Workers' Comp. Appeal Bd. (H.M. Stauffer & Sons, Inc.)*, 760 A.2d 899 (Pa.Cmwlth.2000) (where an employee continues to suffer residual impairment from his work injury and is earning less than his pre-injury average weekly wage, he is entitled to partial disability benefits); *Harper & Collins v. Workmen's Comp. Appeal Bd. (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996) (employee who is unable to resume her pre-injury position because of her work injury and who is not presently earning wages equal to her pre-injury wage continues to be entitled to partial disability benefits).

In support of her position, Claimant asserts she did not have asthma until ex-

posed to Di–Isocyanate while working at First Employer. The medical reports from both parties' experts agree that her occupational exposure to Di–Isocyanate caused her asthma and that she should avoid contact with Di–Isocyanate in the future. To that end, Claimant cites a June 2010 report from Pulmonologist, which states (with emphasis added):

> *[Claimant] has had two acute dyspneic episodes specifically related to work exposure to a floor cleaning agent known to cause both respiratory and skin allergic reactions and sensitization.* Her symptoms have improved on both occasions with acute medical treatment and removal from the workplace environment. *She cannot return to work unless it is assured that she will have no further exposures to this cleaning agent. A repeat exposure could result in a more severe and potentially life-threatening reaction.*

R.R. at 56a. As a result of her asthmatic condition, directly caused by her occupational exposure to Di–Isocyanate with First Employer, Claimant asserts she is unable to return to her pre-injury job. Therefore, Claimant maintains she is entitled to partial disability benefits. *Harper; Davis.*

Claimant further asserts the Board's reliance on *Harle* is misplaced. Here, Claimant's allergic sensitivity to Di–Isocyanate, a chemical in First Employer's floor wax, not a plant shutdown, prevents her from returning to her pre-injury job. Thus, Claimant contends her circumstances are readily distinguishable from those in *Harle*. As such, Claimant argues the Board erred in determining her ongo-

---

1. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa.C.S. § 704; *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa. Cmwlth.2011).

ing loss in earnings was not causally related to her work injury.

In response, First Employer acknowledges that IME Physician's conclusions were consistent with Claimant's medical evidence that her workplace exposure to Di–Isocyanate caused her medical condition and episodes of asthma. However, IME Physician *further* opined that Claimant fully recovered with no residual disability. Thus, First Employer argues, the WCJ did not err in terminating Claimant's benefits upon her full recovery as of IME Physician's February 2013 examination.[2]

### B. Analysis

■ In a claim petition proceeding, the claimant bears the burden of establishing her right to compensation and all of the elements necessary to support an award, including the existence of an injury and disability, and a causal relationship between the injury and the work incident. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873 (Pa.Cmwlth.1999). Further, the burden remains on the claimant to show her injury continues to cause disability throughout the pendency of the claim proceeding.

*Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 168 Pa.Cmwlth. 78, 650 A.2d 114 (1994).

■ Here, IME Physician agreed with Toxicologist and Pulmonologist that Claimant's occupational exposure to Di–Isocyanate directly caused her to develop a sensitivity to Di–Isocyanate, which resulted in three progressively worse asthma attacks requiring emergency room treatment. To that end, IME Physician opined (with emphasis added):

> The second type of occupational asthma is that of immunologic or allergic reaction. *This occupational asthma can develop over a variable period of time, during which 'sensitization' to an agent in the work place occurs.*
>
> *I believe [Claimant] has this type of immunologic or allergic reaction to a low molecule weight compound, that is [Di–Isocyanate] found in the floor care material. It is believed that this is an immunologic reaction that can occur over time.* The exact mechanism is unclear.
>
> [Claimant] worked at [Employer] over a period of three to four years. There is no information that a new chemical was introduced prior to her symptoms.

---

2. First Employer also contends Claimant failed to raise to the Board the issue of whether WCJ erred by applying the standard enunciated in *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998), for awarding benefits for work-related asthma. In *Baxter*, the Supreme Court ultimately held that a claimant was not entitled to receive workers' compensation benefits for a work-related aggravation of preexisting asthma after he fully recovered from the injury caused by the aggravation. However, the *Baxter* Court indicated the result may be different where a claimant's asthma was directly caused by his employment.

We reject First Employer's waiver contention. In *Baxter*, the Supreme Court deter-

mined the claimant was ineligible for benefits because he fully recovered from a work-related aggravation of his preexisting asthma. Here, Claimant, in her appeal filed with the Board on January 12, 2012, alleged: "The Judge was in error finding that as of February 23, 2011 [C]laimant was found to be fully recovered with no residual disability." Claimant further asserted the WCJ's determination that she fully recovered with no residual disability was not supported by substantial evidence. *See* R.R. at 127a. In sum, Claimant adequately preserved the issue of whether she is entitled to ongoing benefits based on a residual impairment that precludes her return to her pre-injury job.

*These three to four years may have been a significant latency or sensitization period that eventually resulted in her acute initial presentation as well as subsequent presentations when re-introduced to her environment and these chemicals.*

*Occupational asthma whether immunologic or irritant in nature, can result in chronic symptoms with abnormal pulmonary function tests and the need for chronic maintenance medication, that is controlled medications.* Fortunately, despite her three incidents, [Claimant] has no clinical or physiologic evidence of persistent airway obstruction requiring chronic controller medications. This would be termed either chronic irritant asthma or reactive airways dysfunction syndrome.

    \*    \*    \*    \*    \*    \*

*I do believe that her asthma is directly related to her work place exposures.*

R.R. at 101a–02a.

As discussed above, Claimant contends she is entitled to ongoing partial disability benefits because her wages at Second Employer are less than her pre-injury wages with First Employer. The parties' medical experts agreed that Claimant had no signs or symptoms of respiratory disease prior to her occupational exposure to Di-Isocyanate at First Employer. Further, the parties' medical experts agreed that Claimant's occupational exposure to Di-Isocyanate directly caused her asthma and that she must avoid contact with Di-Isocyanate in the future. Claimant therefore argues she is precluded from returning to her pre-injury position with First Employer.

The Supreme Court's decision in *Bethlehem Steel Corporation v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998), is instructive here. Under the Workers' Compensation Act (Act),[3] an award of benefits is contingent upon proof that the claimant suffered an injury or disease in the workplace and the injury or disease affects his or her ability to earn a wage. *Id.* In *Baxter*, the claimant, previously diagnosed with childhood asthma, suffered from breathing problems while exposed to paint fumes while working as a welder. In short, the claimant's exposure to paint fumes aggravated his preexisting allergic asthma.

However, away from his occupational exposure to the paint fumes, the claimant's lung functions returned to normal and his work-related injuries completely resolved. In addition, the claimant's occupational exposure to paint fumes did not result in any permanent injury. The Board affirmed an award of ongoing total disability benefits despite the fact the claimant fully recovered because the claimant's return to the allergen-filled work environment would result in disability.

On appeal, the Commonwealth Court affirmed, citing *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987).[4]

In reversing, the Supreme Court distinguished *Farquhar* on the ground that the

---

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–104.1–2501–2708.

**4.** In *Farquhar*, a plurality decision, the claimant's work duties caused her to sustain a thrombosis, or blood clot, which obstructed blood flow to her arm. The claimant established by medical evidence that her work directly caused her injuries. Thereafter, the claimant returned to work essentially performing the same duties. Ultimately, the Supreme Court determined the claimant proved her eligibility for benefits because she could not perform her pre-injury job without again risking serious injury.

*Baxter* claimant fully recovered and his lung functions returned to normal when not exposed to the work place allergens.

The *Baxter* Court also discussed its decision in *Lash v. Workmen's Compensation Appeal Board (General Battery Corp.)*, 491 Pa. 294, 420 A.2d 1325 (1980), where the claimants, who handled lead on a daily basis as part of their job, were awarded partial disability benefits upon their transfer to lower paying lead-free jobs. As a result of their frequent exposure to lead, the claimants began to undergo physiological changes. The lead in their bodies reached abnormally high levels, which resulted in lead poisoning, an occupational disease under the Act. Because the claimants could not risk further exposure to lead, they were precluded from returning to their pre-injury jobs. Ultimately, the Supreme Court reasoned, it would be unconscionable to require the claimants to remain exposed to lead until the advanced stages of lead poisoning in order to qualify to partial disability benefits.

In distinguishing *Farquhar* and *Lash,* the *Baxter* Court noted (with emphasis added):

> The claimants in *Farquhar* and *Lash* suffered from residual work-related injuries that were never resolved. The claimant in *Farquhar* continued to suffer from thrombosis which was caused by her employment; the *Lash* claimants continued to suffer from lead absorption which was caused by their employment. These work-related injuries were ongoing. The *Farquhar* claimant did not fully recover from the thrombosis; the blood of the Lash claimants did not become lead free.
>
> *Had [the claimant] introduced medical evidence in this case that [Baxter's] exposure to paint fumes at Bethlehem Steel had resulted in an ongoing condition that affected his pulmonary capacity, Farquhar and Lash would be controlling.* Instead, [the claimant's] medical expert found no evidence that the claimant had sustained any continuing changes to his pulmonary capacity or in the functioning of his lungs.

*Baxter,* 708 A.2d at 804.

In short, once the claimant in *Baxter* fully recovered from his work-related aggravation and returned to his medical baseline, he became ineligible for workers' compensation benefits regardless of his inability to return to his pre-injury work place because of his preexisting asthma.

Here, unlike the situation in *Baxter,* Claimant did not suffer from a preexisting asthmatic condition, and she did not have any work-related medical restrictions prior to her work injury. As such, her baseline condition materially differed from that of the claimant in *Baxter.* Further, the parties' medical experts agreed Claimant's work place exposure to Di–Isocyanate directly caused her to develop occupational asthma.

In short, Claimant developed allergic asthma and an ongoing sensitivity to Di–Isocyanate as a direct result of her pre-injury job. Thus, contrary to the situation in *Baxter,* Claimant did not return to her pre-injury medical baseline. Moreover, despite her normal pulmonary functions, Claimant's asthma and ongoing sensitivity to Di–Isocyanate preclude her from returning to her pre-injury job.

In accord with the Supreme Court's discussion in *Baxter,* this is the type of situation where an award of benefits could be appropriate. The parties' medical experts agreed that Claimant's cumulative exposure to Di–Isocyanate directly caused her to develop asthma and on ongoing sensitivity to Di–Isocyanate, which prevents her from returning to her pre-injury job. Re-

gardless of whether the Claimant lacks current pulmonary symptoms or does not need current treatment, these are residual medical conditions that Claimant did not have prior to her employment with First Employer.

Consequently, we hold that the WCJ's determination that Claimant fully recovered from her work injury without any residual impairment is contrary to the credited evidence of record and is erroneous as a matter of law. Claimant's medical experts and IME Physician agreed that Claimant developed allergic asthma and cannot return to her pre-injury work environment as a result of her cumulative occupational exposure to Di–Isocyanate. Therefore, the WCJ erred in terminating Claimant's benefits as of IME Physician's February 2011 examination. *Cf. Knapp v. Workmen's Comp. Appeal Bd. (GTE)*, 671 A.2d 258 (Pa.Cmwlth.1996) (to establish a claim for future work-related aggravation, a claimant need only show the aggravation arose in the course of employment, the aggravation is related to the employment, and that the claimant cannot return to the work place because the aggravation will most probably recur).

Accordingly, we reverse the Board's order and remand this case with directions for a remand to the WCJ to consider an award of additional benefits based on the current record.

As a final note, however, our review of the record indicates that Claimant's and Employer's medical evidence consisted solely of medical reports from examining physicians. At the WCJ's December 29, 2010 hearing, Employer objected to the admission of Claimant's medical reports from Toxicologist and Pulmonologist as support for a claim of continuing disability.[5] *See* R.R. at 20a–22a. The WCJ admitted the reports subject to Employer's objection. *Id.* However, the WCJ did not rule on this objection prior to the issuance of his decision and order. The resolution of this objection could affect the length of Claimant's entitlement to benefits. *See Weaver v. Workers' Comp. Appeal Bd. (State of the Art, Inc.)*, 808 A.2d 604 (Pa. Cmwlth.2002) (where a claimant's claim exceeds 52 weeks, the claimant could not rely on medical reports alone after the employer objected to their admissibility). Because the WCJ based his finding of disability on Toxicologist's report, Finding of Fact No. 7, we request that the WCJ determine the admissibility of this report for purposes of any award of further benefits. *Weaver.*

### III. Conclusion

For the above reasons, we reverse the order of the Board and remand this case to the Board with directions for a remand to the WCJ to consider an additional award of benefits based on the current record, consistent with this opinion.

### *ORDER*

**AND NOW,** this 25th day of March, 2015, the order of the Workers' Compensation Appeal Board is **REVERSED** and this case is **REMANDED** to the Workers' Compensation Appeal Board with directions for a remand to the Workers' Compensation Judge to consider award of

---

5. Section 422(c) of the Act, added by the Act of June 26, 1919, P.L. 642, *as amended,* provides "[w]here any claim for compensation at issue before a [WCJ] exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission." 77 P.S. § 835(c); *see also Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170 (Pa.Cmwlth.2004) (where disability of 52 weeks or less is at issue, reliance on a medical report is appropriate).

9

additional benefits based on the current record, consistent with this opinion.

Jurisdiction is relinquished.