Sheryl **KOZLOWSKI**, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (McKEESPORT HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 27, 2000.

Decided Dec. 29, 2000.

Carl B. Zacharia, McKeesport, for petitioner.

Michael A. Cohen, Pittsburgh, for respondent.

Before PELLEGRINI, Judge, FLAHERTY, Judge and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Claimant Sheryl Kozlowski petitions for review of the May 5, 2000 order of the Workers' Compensation Appeal Board (Board) that affirmed the order of the workers' compensation judge (WCJ) denying Claimant's claim petition on the grounds that Claimant failed to establish that she suffered from an occupational disease under Section 108(n) of the Workers' Compensation Act (Act)[1] or that she suffered a work-related injury under Section 301(c)(1) of the Act, 77 P.S. § 411(1). Claimant states three issues for our review: whether the workers' compensation authorities (1) erred by failing to find that Claimant suffered from an occupational disease under Section 108(i) of the Act, 77 P.S. § 27.1(i); (2) erred by failing to find that latex allergies are not an occupational disease covered by Section 108(n); and (3) erred by concluding that Claimant's injury

1. Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(n).

is not compensable under Section 301(c)(1). We affirm.

The WCJ found the following facts. Claimant had been employed by McKeesport Hospital (Employer) as nursing assistant from approximately 1988 until her last day of work on October 31, 1997. She has not been employed since that time. Her primary duty as a nursing assistant was rendering patient care, which required the use of latex gloves. In 1992, Claimant first started noticing problems with the use of latex gloves. These problems started as hives on her arms and wrists, and then continued to worsen. Claimant's symptoms included hives, a blotchy forehead, swollen eyes, nasal congestion, sore throat, shortness of breath and headaches. Claimant also suffers from other allergies and has treated with Dr. Ming S. Lin, a board-certified allergist.

When Claimant first started noticing these problems, she reported them to Employer. Claimant continued to deal with Employer's Health Department. It advised her that there were no jobs that could be made available to her within the hospital that were totally within a latex-free environment. Claimant subsequently sustained a work-related injury to her lower back and was disabled for a period of time. During that time, Claimant gave birth to her only child.

In 1994, Claimant returned to work in Employer's Radiology Department. Other than for the short time when she was transferred out of that Department, Claimant continued to work in the Radiology Department through October 31, 1997.

On or about December 1, 1997, Claimant filed a claim petition alleging that she sustained a work-related injury in the nature of a severe allergic reaction to latex in the course of her employment with Employer and has been partially disabled since November 3, 1997. She alleged that the allergic reaction was caused by exposure to latex mainly in the form of examination or surgical gloves. Claimant also alleged in her petition that she suffers from an occupational disease caused by constant exposure to latex rubber and airborne latex particles. Employer filed a timely answer denying Claimant's allegations.

Before the WCJ, Claimant testified on her own behalf and introduced the deposition testimony of Dr. Lin, her treating physician. The WCJ found that although Dr. Lin credibly testified that Claimant suffers from a latex allergy, the doctor never testified that Claimant's latex allergy was caused by her exposure to latex products in the workplace. Therefore, the WCJ determined that Claimant's evidence, taken as a whole, failed to establish that she sustained a work-related injury while in the course of her employment with Employer.

Specifically, the WCJ reasoned that in light of the fact that Claimant has many other allergies, has a family history of allergies, and has treated for other allergies with the same symptoms as her alleged reaction to latex products, Claimant failed to establish an obvious causal connection between her exposure to latex and the development of her allergy. Consequently, the WCJ determined that Claimant failed to meet her burden of proving that her latex allergy was due to her work exposure to latex.

In addition, the WCJ found that Dr. Lin never testified that the incidence of latex allergy is substantially higher in the health care industry than in the general public. The WCJ also reviewed a National Institute for Occupational Safety and Health (NIOSH) Alert submitted by Claimant. The WCJ determined that the NIOSH Alert failed to adequately establish a difference between the general public and the community of health care workers as to the development of latex allergies. As a result, the WCJ determined that Claimant failed to establish that she suffers from an occupational disease as defined by Section 108(n) of the Act, 77 P.S. § 27.1(n).

In view of the foregoing, the WCJ denied Claimant's claim petition. The

Board affirmed and Claimant appealed to this Court. On review, this Court is limited to a determination of whether the necessary findings of fact are supported by substantial evidence, whether errors of law have been committed or whether constitutional rights have been violated. *Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear),* 707 A.2d 618 (Pa. Cmwlth.1998).

Claimant's first argument is that the worker's compensation authorities erred by failing to find that Claimant suffered from an occupational disease included under Section 108(i) of the Act. That section defines the term "occupational disease" in relevant part as: "Infection or inflammation of the skin due to oils, cutting compounds, lubricants, dust, liquids, fumes, gases or vapor, in any occupation involving direct contact with, handling thereof, or exposure thereto." 77 P.S. § 27.1(i). Citing *Gregorious v. Workmen's Compensation Appeal Board (European Health Spas),* 87 Pa.Cmwlth. 86, 486 A.2d 564 (1985), Claimant argues that Section 108(i) differs from Section 108(n) insofar as the former does not impose the burden of proving a substantially greater incidence of that disease in the occupation than in the general population. Thus, Claimant asserts that either the WCJ or the Board should have addressed the applicability of Section 108(i).

■ In response, Employer contends that Claimant failed to preserve this issue for appellate review. This Court agrees. As Claimant stated in her brief: "Neither the Judge nor the Board addressed the applicability of § 108(i)." Claimant's Brief, p. 12. A review of the record indicates that in her appeal to the Board, Claimant did not raise the issue of whether the WCJ erred by failing to apply Section 108(i) of the Act. *See* Appeal from Judge's Findings of Fact and Conclusions of Law, Respondent's Brief, Appendix 1a.

Because Claimant has failed to raise this issue with any degree of specificity before the Board, it has not been preserved for appeal. *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt),* 739 A.2d 1084 (Pa.Cmwlth.1999). As a result, this issue has been waived.

■ Claimant's second argument is that the workers' compensation authorities erred by finding that latex allergies are not an occupational disease under Section 108(n) of the Act, 77 P.S. § 27.1(n). In a claim petition proceeding, the claimant bears the burden of establishing the right to compensation and all necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993).

In *Allingham v. Workmen's Compensation Appeal Board (City of Pittsburgh),* 659 A.2d 49 (Pa.Cmwlth.1995), this Court recognized that the claimant has the burden of establishing each of the elements in Section 108(n) in order to establish that he or she suffers from an occupational disease. In the case *sub judice,* in Finding of Fact No. 7, the WCJ found that Dr. Lin never testified that the incidence of latex allergy is substantially higher in the health care industry than in the general public. The WCJ further found that the NIOSH Alert failed to establish any significant statistical or epidemiological differences in the development of latex allergies between the general public and health care workers.

Nevertheless, Claimant argues that the NIOSH Alert contained statistics indicating that a health care worker is two to eight times more likely than the general public to become "latex-sensitized." Noting the lack of case law on the subject, Claimant argues that this statistical data is sufficient to establish an occupational disease under Section 108(n).

Regarding the NIOSH statistics, the WCJ found:

> This alert also provides some statistics from studies, but does not offer any opinion as to the importance or signifi-

cance of the numbers listed. For example, the alert merely notes that recent studies show that one to six percent of the general population and eight to twelve percent of regularly exposed health care workers are sensitized to latex. However, it also notes that reports of prevalence vary greatly.

WCJ's Decision, Finding of Fact No. 6; p. 4.

The NIOSH Alert provides in relevant part:

HOW COMMON IS LATEX ALLERGY?

The prevalence of latex allergy has been studied by several methods:

—Questionnaires to assess reactions to latex gloves

—Medical histories of reactions to latex-containing projects

—Skin tests

—Tests for latex antibodies in a worker's blood

*Reports about the prevalence of latex allergy vary greatly. This variation is probably due to different levels of exposure and methods for estimating latex sensitivity or allergy.* Recent reports in the scientific literature indicate that from about 1% to 6% of the general population and about 8% to 12% of regularly exposed health care workers are sensitized to latex [Kelly et al.1996; Katelaris et al. 1996 Liss et al. Ownby et al.1996; Sussman and Beezhold 1995].

NIOSH Alert, pp. 4–5; Reproduced Record (R.R.) 96a (emphasis added).

As indicated by the above-cited text, although the NIOSH Alert contains statistics tending to indicate that health care workers are slightly more likely than the general population to develop latex allergies upon being exposed to latex, it also states that the reports about the prevalence of latex allergy vary greatly, depending in part upon the method used to estimate latex sensitivity. As a result, there is substantial evidence for the WCJ's determination that the NIOSH Alert does not establish that Claimant sustained an occupational disease as described under Section 108(n), i.e., a disease "the incidence of which is substantially greater in that industry or occupation than in the general population." Where, as here, the WCJ's critical findings are supported by substantial evidence, they will not be disturbed. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

Furthermore, this Court recognizes that its role in workers' compensation cases does not include reweighing the evidence or reviewing the credibility of witnesses. Instead, as an appellant body, this Court must merely ascertain whether, upon consideration of the evidence as a whole, the WCJ's findings "have the requisite measure of support in the record. Credibility determinations are within the exclusive province of the [WCJ] and findings of fact can be overturned only if they are arbitrary and capricious." *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 329, 652 A.2d 797, 800 (1995). As such, in the present case it was clearly within the province of the WCJ to determine the evidentiary weight to be assigned to the NIOSH Alert. As noted above, this Court concludes, upon reviewing the NIOSH Alert, that the WCJ did not err or abuse his discretion in determining that the report failed to establish any significant differences in the development of latex allergies between the general population and health care workers. Consequently, the WCJ did not err in concluding that Claimant failed to establish that she suffered from an occupational disease under Section 108(n).

Claimant's third argument is that the workers' compensation authorities erred by concluding that her injury is not compensable under Section 301(c)(1) of the Act, 77 P.S. § 411(1). In her brief, Claimant argues that she should not be denied benefits "merely because no physician can

state exactly what caused her untreatable condition." Claimant's Brief, p. 15. Claimant contends that her testimony, which the WCJ found to be credible, as well as the NIOSH Alert, demonstrates "without question" that Claimant contracted her latex allergy at work.

"A straightforward reading of the [Act] reveals that a claimant, in order to be eligible for workmen's compensation, must establish only two requirements: 1) that the injury occurred in the course of employment and 2) that it was related thereto." *Lehigh County Vo–Tech,* 539 Pa. at 327, 652 A.2d at 799. "Whether an injury to a workmen's compensation claimant is sustained in the course of employment is a question of law." *Id.*

"Lay testimony is probative on the issue of physical injury and the cause of that injury *only if the cause and effect are so immediate, direct and natural to common experience as to obviate any need for an expert medical opinion.*" *Weaver v. Workmen's Compensation Appeal Board (Pennsylvania Power Co.),* 87 Pa. Cmwlth. 428, 487 A.2d 116, 118 (1985) (emphasis added). However, such is not the case here.

Here, the WCJ found that Claimant suffers from many other allergies, that she has a family history of allergies and that Dr. Lin has treated her for other allergies with the same symptoms as her alleged reaction to latex products. *See* Finding of Fact No. 8; Dr. Lin's Deposition (Depo), pp. 27–30; R.R. 72–75a. As a result, the WCJ found that there was no obvious connection between her exposure at work to latex and the development of her allergy. *Id.*

As such, this Court believes that expert medical evidence is necessary in order to establish that Claimant's latex allergy is related to her employment. Inasmuch as Dr. Lin's testimony fails to establish such as causal connection, the WCJ did not err in concluding that Claimant failed to meet her burden of proving that she suffered a work-related injury under Section 301(c)(1) of the Act.

In view of the foregoing, the order of the Board is affirmed.

## *ORDER*

AND NOW, this 29th day of December, 2000, the May 5, 2000 order of the Workers' Compensation Appeal Board is hereby affirmed.