116 Pa. Commonwealth Ct. 392 (1988)
541 A.2d 1171
Thomas Jefferson University Hospital, Petitioner
v.
Workmen's Compensation Appeal Board (Giordano), Respondents.
No. 3397 C.D. 1986.
Commonwealth Court of Pennsylvania.
Submitted on briefs December 14, 1987.
May 26, 1988.
Submitted on briefs December 14, 1987, to Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.
*393 Colin M. Vroome, Post & Schell, P.C., for petitioner.
Julian C. Wessell, III, for respondent, Theo Giordano.
OPINION BY JUDGE BARRY, May 26, 1988:
Thomas Jefferson University Hospital (the employer) petitions for our review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's grant of total disability benefits to Theo Giordano (claimant). We affirm.
The claimant was employed as a registered nurse by the employer. She suffered from a pre-existing back condition known as spondylolisthesis, grade III, which caused her extensive pain in her lower back. Despite this congenital back condition the claimant both trained and worked as a registered nurse at Thomas Jefferson University Hospital; in 1975 she underwent a spinal fusion in order to stabilize her vertebrae.
In November of 1980 the claimant felt severe pain in her left side and along her left buttock and leg after she lifted a thirty-eight pound infant while working in the employer's intensive care nursery. Prior to this incident, the claimant had never experienced pain in her left *394 buttock or leg. The referee found that this incident amounted to an aggravation of her pre-existing condition.
On June 25, 1981 the claimant felt extreme sharp pain in her lower back and left leg after she lifted a seventy-five pound metal incubator to replace its wheel. She was using the incubator to transport an infant from the nursery for diagnostic testing. The referee found that this incident amounted to a re-aggravation of the claimant's pre-existing spondylolisthesis.
The referee made the following pertinent findings of fact with respect to the events which followed the June 25, 1981 incident:
8. As a result of the June 25, 1981 injury, claimant suffered severe low back and left leg pain and was unable to perform her nursing duties.
9. As a result of the pain in claimant's lower back, and left leg, and her consequent inability to perform full-time nursing duties, she asked defendant for part-time duties, but she was refused and told no part-time positions were available, and she therefore was told to leave her position by defendant.
10. By September, 1982, claimant's low back pain increased to the point that she became extremely restricted in physical activities and could not get out of bed without pain and had difficulty sleeping. She sought repeated medical treatments from various physicians in an attempt to relieve her excruciating pain.
In an attempt to relieve this back pain, claimant had a foramenotomoy [sic] performed on October 15, 1982, but the surgery was only partially successful in eliminating the pain.

*395 11. As a result of the June 25, 1981 re-aggravation of the pre-existing spondylolisthesis, claimant is extremely limited in her physical activities and cannot do any bending or lifting, or walk up or down steps, or more than one block without causing herself extreme low back pain. She must also use a back brace.
The referee concluded that due to the June 25, 1981 incident which he labeled a re-aggravation of a pre-existing condition, the claimant is totally disabled from any type of employment. In reaching this conclusion the referee specifically found the testimony of the claimant and John L. Sbarbaro, M.D., who testified on behalf of the claimant, to be credible.
The employer appealed the referee's grant of benefits to the Board which affirmed. The employer now petitions for our review of the Board's order.
Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.
The employer raises several questions for our review. First, it argues that the expert medical testimony presented by Dr. Sbarbaro failed to establish the required link between the claimant's disability and the incidents involving the lifting of the infant and the incubator. It argues that his testimony is insufficient both because it is equivocal and because it is based on an analysis of the temporal proximity between the lifting incidents and the claimant's subsequent disability. We disagree.
It is clear that in workmen's compensation cases where there is no obvious causal connection between a work incident and a subsequent injury the claimant bears the burden of presenting unequivocal medical *396 testimony to establish the requisite causation. Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education), 508 Pa. 360, 498 A.2d 800 (1985). The question of whether Dr. Sbarbaro's testimony is unequivocal is one of law for our review. Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Tompkins), 66 Pa. Commonwealth Ct. 579, 445 A.2d 843 (1982). In reviewing the record we are mindful of the rule that we must examine his testimony as a whole. "It is well-settled that there are no `magic words' the doctor need recite to establish causation, only that the opinion as a whole contains the requisite level of certainty so as to be described as unequivocal. ..." Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch), 97 Pa. Commonwealth Ct. 346, 350-51, 509 A.2d 942, 944-45 (1986) (citations omitted).
On direct examination of Dr. Sbarbaro the following exchange took place:
Q. Do you have an opinion, Doctor?
A. Yes.
Q. What is that opinion?
A. That her current symptoms and disability are directly related to the incidents of November 1980 and June 1981.
Q. In what way are they directly related?
A. They are related in that these two injuries produced scarring and injury to the nerve and adjacent soft-tissue structures, associated bleeding, associated scarring, and this is a new feature of her disability. This scarring has produced peridural [sic] adhesions or arachnoiditis  either one is an acceptable term  and that is what is causing this woman's current problem.
Deposition Testimony, August 9, 1983 at 17.
On cross-examination Dr. Sbarbaro testified as follows:

*397 Q. In fact, isn't it most likely that some if not most of these peridural [sic] adhesions were present prior to any injury in November of 1980 or in June of 1981?
A. That would be no.
Q. Can you state with certainty that these adhesions were not present prior to November of 1980?
A. I can state with certainty that they were not as severe as they were subsequent to 1980.
Q. Would you consider then, Doctor, an event such as lifting an infant or such as placing the wheel on an incubator to be more traumatic than a spinal fusion procedure?
A. Let me try to answer it this way: A spinal fusion procedure is done on the exterior surface of the vertebral body. It is not done intra-spinally, so the spinal fusion procedure as such would not be identified as a cause for peridural [sic] adhesions, whereas an injury to the spine due to an exterior force can produce tearing of soft-tissue structures in the spinal canal. I don't think we can really discuss the two of them in the same context, because they can't be brought together. True, they both may have an element of trauma, but they are in two different areas.
Id. at 35-6.
The employer argues that the case before us is directly controlled by Lewis. We agree that the principles of law as set forth in that case are applicable here; however, the differences in the testimony of the physicians in each case compel a different result here.
In Lewis the claimant's physician testified on direct examination that the claimant's injury "`could have been directly or indirectly could have been the cause' of appellant's condition." This testimony was found to be *398 legally insufficient to establish the necessary causal connection. Lewis, 508 Pa. at 367, 498 A.2d at 803. In the case before us, we have not been able to find any equivocal testimony on the issue of causation. Rather, as demonstrated by the testimony reproduced above, Dr. Sbarbaro was unwaivering in his position that the two lifting incidents caused the claimant's disability. He expressed his opinion clearly on direct examination and was given the opportunity to further explain his position on cross-examination. Accordingly, viewing Dr. Sbarbaro's testimony in its entirety we find that it is unequivocal and therefore we conclude that it is legally sufficient to establish causation.
Further, the employer argues that Dr. Sbarbaro's conclusion that the claimant's lifting incidents caused her disability is incompetent to establish the requisite causation. It relies on the following language from Lewis to support its position, "A physician's assumption that an injury is caused by a recent event because of the temporal proximity is not a sufficiently competent opinion to establish a causal relationship." Id. This language is derived from Bisesi v. Workmen's Compensation Appeal Board (Tower Lines, Inc.), 61 Pa. Commonwealth Ct. 260, 433 A.2d 592 (1981). In analyzing the medical testimony presented in Bisesi we noted:
The claimant's personal physician could offer no diagnosis of his symptoms. He testified that he could only `assume' that the claimant's symptoms were related to his most recent accident because they coincided with its occurrence. The neurosurgeon who testified for the claimant also balked at venturing a definite diagnosis. He could only testify that `it would seem' that the claimant's most recent accident played a role in causing his symptoms because they occurred with greater frequency following the incident.

*399 He repeatedly emphasized that he did not have a definite opinion about the etiology of the claimant's disability.
61 Pa. Commonwealth Ct. at 262, 433 A.2d at 593-94.
Based upon this testimony, we concluded that the medical testimony in Bisesi was "manifestly equivocal and uncertain." Id. at 263, 433 A.2d at 594, and accordingly benefits were denied.
We find Bisesi to be inapplicable to the case before us. Here, Dr. Sbarbaro testified unequivocally that the lifting incidents were the cause of claimant's disability. Further, contrary to the employer's assertions, his conclusion was based upon more than a temporal proximity analysis, as is evidenced by the portion of his testimony on cross-examination as reproduced above.
Second, the employer argues that the referee capriciously disregarded substantial competent evidence establishing the availability to the claimant of suitable, alternative employment. However, we need not address this alleged error. The question of whether suitable work is available to the claimant is reached only where there is evidence that claimant is capable of doing such work; no such evidence was presented by the employer. Absent such evidence, the referee properly ignored the evidence of available jobs.
Finally, the employer argues that the referee improperly based the claimant's benefit rate on a pre-injury average weekly wage of $450.00 rather than $406.39 to which counsel had stipulated. The employer concedes that the use of $406.39 as the claimant's pre-injury average weekly wage would have no bearing on the claimant's total disability benefit rate. We agree.[1] *400 However, the employer goes on to argue that the use of the lower wage would affect the partial disability benefit rate.
We need not address this particular argument inasmuch as we cannot agree with the employer's assertion that the record contains a stipulation that the claimant's pre-injury average weekly wage was in fact $406.39. To support its assertion, the employer directs us to its Statement of Wages and its transmittal letter of the same addressed to the referee. The transmittal letter contains the following:
I am also enclosing a copy of the Statement of Wages prepared by the employer; this has been completed in compliance with Section 309 of the Workmen's Compensation Act. By carbon copy of this letter, I am providing claimant's attorney with a copy of the Statement of Wages, and asking that he stipulate to the information contained therein.
Reproduced Record at 340a.
We find that this constitutes nothing more than an invitation to stipulate which, upon our review of the record, was not accepted by the claimant's attorney. Accordingly, we conclude that there was no stipulation as to the claimant's pre-injury average weekly wage. Absent such a stipulation, the referee, as fact finder, determined the amount of the claimant's wages. See generally Cooper-Jarrett, Inc. v. Workmen's Compensation Appeal Board (Brown), 61 Pa. Commonwealth Ct. 18, 432 A.2d 1131 (1981). We cannot disturb a referee's finding of fact so long as it is supported by substantial evidence. *401 However, the employer has not presented us with an argument that this finding is not supported by substantial evidence other than its argument with respect to the alleged stipulation, which we have already rejected.
Accordingly, the Board's order is affirmed.

ORDER
NOW, May 26, 1988, the order of the Workmen's Compensation Appeal Board at No. A-91050 dated October 24, 1986, is hereby affirmed.
NOTES
[1] Since the referee found that her injury occurred in 1981, the claimant's maximum weekly compensation rate is $262.00. The referee, in fact, awarded claimant a $262.00 weekly benefit. Since sixty-six and two-thirds per cent of either $450.00 or $406.39 exceeds the maximum weekly compensation rate it is immaterial which wage is used for purposes of calculating the total disability compensation rate. See Section 582 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §511.