605 A.2d 478

**Ruth M. POVANDA, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GIANT EAGLE MARKETS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 3, 1992.

Decided March 12, 1992.

Reargument Denied April 25, 1992.

Richard G. Spagnolli, for petitioner.

Sylvester A. Beozzo, for respondent.

Before COLINS and KELLEY, JJ., and NARICK, Senior Judge.

COLINS, Judge.

Ruth M. Povanda (claimant) petitions for review of a decision and order of the Workmen's Compensation Appeal Board affirming the referee's denial of workmen's compensation benefits to claimant.

Claimant has been employed as a meat wrapper by Giant Eagle Markets, Inc. since 1958. In June 1985, claimant

filed a claim petition seeking total disability benefits beginning May 28, 1985, as a result of a condition known as Raynaud's phenomenon which she alleged was aggravated by the cold environment in which she worked. Hearings were held during which claimant testified and presented the deposition testimony of her doctor, Angela M. Stupi, M.D. (Dr. Stupi), a practicing rheumatologist, Board-certified in internal medicine. Employer presented a medical report of Paul S. Caplan, M.D. (Dr. Caplan), who examined claimant on September 24, 1985. The referee issued a decision April 23, 1987 granting claimant's petition in part.

Both parties appealed that decision to the Board, and by decision and order dated June 24, 1988, the Board vacated the referee's decision and remanded the matter to the referee for more specific findings of fact "concerning the causal connection, if any, between Claimant's work and her physical problems and a specific reference to the medical record which supports the Referee's findings of fact concerning Claimant's possible disability."

On remand, following a hearing on April 18, 1989, at which claimant testified, the referee made the following pertinent findings of fact:

2. During her employment claimant has been a meat wrapper working in a cold environment.

.    .    .    .    .

4. Before starting to work for the defendant, claimant never had any problems with her hands.

5. In the mid-sixties claimant began to develop problems with her hands. Her hands became discolored and sore; they would break out. She never experienced this before the mid-sixties.

6. At times her hands would be very sore and bleed.

7. The condition of claimant's hands progressed to a point in April of 1985 that she first sought medical assistance from a Dr. Angela Stupi.

8. Claimant worked until May 28, 1985, at which point she stopped working on advice of her doctor.

9. Since stopping working on May 28, 1985, claimant's hands have improved to where on September 11, 1985 she stated they were all right.

. . . . .

12. Claimant did not work from May 28, 1985 until she secured a position with Kaufmann's department store in March of 1989, working approximately 20 hours a week at $4.00 an hour.

13. Angela M. Stupi, M.D., is a practicing rheumatologist, Board certified in internal medicine. Her deposition testimony for the claimant was given in February 27, 1986. She first saw claimant on April 10, 1985 with a history that for the past 20 years, claimant had been having color changes in her fingers and feet. Following test, she diagnosed claimant's problems as Raynaud's phenomenon with limited CREST syndrome. Claimant was seen several times following the first visit on April 10, 1985. On May 28, 1985, claimant was seen at which time she had just returned from a vacation. Her hands were found to be normal, and at this time Dr. Stupi advised claimant to stop working at her usual type of occupation. There then ensued a series of visits that found claimant to be varying degrees of distress that were suspected to be caused by the Raynaud's phenomenon. This doctor opined within a reasonable degree of medical certainty that the exposure to cold in the workplace aggravated the pre-existing scleroderma or Raynaud's syndrome. Doctor further opined that a return to the former type of occupation with defendant would certainly aggravate claimant's condition.

14. Dr. Stupi testifies that she does not know the underlying cause of Raynaud's syndrome or what makes an individual susceptible to it.

15. Dr. Stupi advised claimant to stop smoking.

. . . . .

17. Dr. Stupi opined that claimant could do work in normal temperatures that did not require the handling of cold objects.

18. Overall, it is found from the testimony of Dr. Stupi that the claimant's condition has not been shown to be caused by the workplace exposure.

19. It is found from Dr. Stupi's testimony that claimant's condition was aggravated by the workplace.

20. It is found that claimant is unable to return to her usual type of employment in a cold environment but the reason for this is a condition not related or caused by the workplace.

21. It is found the claimant could not perform on the Pizza Person position due to the need to handle cold foods.

22. Paul S. Caplan, M.D., examined claimant on September 24, 1985. His written report of October 16, 1985 is accepted in evidence as claimant has withdrawn her objection to it. His diagnosis is essentially the same as Dr. Stupi, that is, Progressive systemic sclerosis, possible CREST syndrome.

23. Dr. Caplan opined that the scleroderma development is not caused by exposure to cold. He agrees with Dr. Stupi that claimant should not work in a cold environment.

24. It is found that claimant did suffer from an aggravation of her pre-existing condition resulting in the need for medical attention between April 10, 1985 and May 28, 1985.

25. No disability from the [aggravation] is found.

26. It is found that the claimant could not work after May 28, 1985 at her usual position with the defendant due to the condition of scleroderma that was not caused by the workplace.

The referee concluded that claimant failed to meet her burden of proving that her inability to return to work was due to the workplace. He further concluded that claimant proved that she suffered a temporary aggravation between April 10, 1985 and May 28, 1985, but that the injury was non-compensable. Employer was ordered to pay for medical treatment to claimant for that period, plus attorneys

fees and costs, and was granted a termination as of May 29, 1985.

Claimant appealed, and the Board affirmed the referee's decision, concluding that the referee's findings and conclusions that claimant failed to meet her burden of proof were supported by substantial, competent evidence. Specifically, the Board stated that "Dr. Stupi failed to provide testimony connecting the exposure of cold conditions in the workplace to the Raynaud's symptoms. Cold temperatures were only established as a possible contributor to eliciting the symptoms common with the disease."

Claimant raises the following issues for our review: (1) whether the referee erred as a matter of law by applying an incorrect legal standard; (2) whether the referee committed error by basing his decision upon findings of fact which are inconsistent with one another; and (3) whether the referee's decision is contrary to and not supported by the medical experts' testimony.[1]

In a claim for workmen's compensation, "the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award." *Halaski v. Hilton Hotel,* 487 Pa. 313, 409 A.2d 367 (1979). A claimant who has a pre-existing condition and is alleging an aggravation of the pre-existing condition is entitled to compensation if he or she shows (1) that the injury, or aggravation, arose in the course of employment, and (2) that the injury was related to that employment. *Cooper–Jarrett, Inc. v. Workmen's Compensation Appeal Board,* 55 Pa.Commonwealth Ct. 204, 423 A.2d 52 (1980). It is undisputed that claimant has met her burden of proof with respect to the first requirement. In order to satisfy the second requirement, however, claimant must establish a causal connection between her work and the disabling inju-

1. Our review of this matter is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or an error of law was committed. *Pecht v. Workmen's Compensation Appeal Board (The Arrow Company),* 114 Pa.Commonwealth Ct. 457, 539 A.2d 31 (1988).

ry. *Huddelson v. Workmen's Compensation Appeal Board (Department of Military Affairs)*, 83 Pa.Commonwealth Ct. 643, 478 A.2d 518 (1984). Where the causal connection is not obvious, unequivocal medical testimony is required. *Id.* The determination that medical evidence is unequivocal is a legal conclusion and is fully reviewable by this Court. *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Giordano)*, 116 Pa.Commonwealth Ct. 392, 541 A.2d 1171 (1988).

It is claimant's assertion that she is entitled to benefits under Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act (Act),[2] because she established, through unequivocal medical testimony, that her exposure to cold products and cold temperatures at work aggravated her pre-existing disease and prevented her from returning to that environment. Section 301(c)(1) of the Act provides in pertinent part:

(1) The terms 'injury' and 'personal injury' as used in this act, shall be construed to mean *an injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection* as naturally results from the injury or *is aggravated, reactivated or accelerated by the injury....*

The term 'injury arising in the course of his employment,' *... shall include all injuries caused by the condition of the premises* or by the operation of the employer's business or affairs thereon....

77 P.S. § 411 (emphasis added).

In an analogous case, *Pawlosky v. Workmen's Compensation Appeal Board*, 514 Pa. 450, 525 A.2d 1204 (1987), the Pennsylvania Supreme Court held that the workplace aggravation of a pre-existing disease constituted a compensable injury. The court articulated that:

[i]t may now be said, generally, that an employer takes an employee as he comes. Specifically included in the new

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.

statutory conception of 'injury' is the job-related aggrava-
tion, reactivation or acceleration of a pre-existing disease,
even if the underlying disease itself was not caused by a
work-related injury.

*Id.*, 514 Pa. at 458–59, 525 A.2d at 1209.

The claimant in *Pawlosky* suffered from asthma, defined
by his medical expert, Dr. Mayewski, as "a hyper-reactivity
of the bronchial airways to irritants." *Id.*, 514 Pa. at 453,
525 A.2d at 1206. Dr. Mayewski did not know how or when
the claimant contacted asthma but opined that fumes from
the chemicals to which the claimant was exposed on his job
irritated the asthma and caused attacks. He concluded,
therefore, that the claimant was no longer able to perform
his job at the Latrobe Brewing Company. He did concede,
however, that a variety of non-occupational stimuli could
also trigger irritation of the claimant's asthma. The em-
ployer's medical expert essentially agreed that the fumes
the claimant was exposed to in his job aggravated or
irritated his condition and, with each exposure, would pro-
duce an adverse physiological reaction called a bronchos-
pasm, during which the claimant would have difficulty
breathing. In analyzing the medical evidence, the court
stated that:

> each instance in which such an attack was caused by the
> chemical fumes would constitute an 'injury'.... That is,
> the claimant's inhalation of the chemical fumes would
> bring about an adverse and hurtful change in his system;
> and such change would cause him to suffer a lessened
> facility in the natural use of a bodily activity or capability,
> i.e., breathing.

*Id.*, 514 Pa. at 461–62, 525 A.2d at 1210. The court held
that the claimant met his burden of proving all that was
necessary to entitle him to an award of workmen's compen-
sation benefits.

In the instant matter, Dr. Stupi testified on behalf of
claimant that she first saw claimant on April 10, 1985 and
that following a complete physical examination, including
diagnostic testing, it was her opinion that claimant was

suffering from Raynaud's phenomenon, which is a symptom complex most likely related to an underlying progressive systemic sclerosis of the CREST [3] syndrome variance, or a limited form of scleroderma. Regarding the causal connection between claimant's work and her injury, Dr. Stupi testified as follows:

> Q  Doctor, within a reasonable degree of medical certainty, do you have an opinion as to whether or not Mrs. Povanda's exposures to cold temperatures in her work as a meat cutter aggravated her pre-existing scleroderma or Raynaud's syndrome?
>
> A  I feel very certain that any cold exposure, be it either total body cold exposure or handling with cold articles or items would exacerbate the condition of the Raynaud's syndrome.
>
> Q  Doctor, if Mrs. Povanda were to return to work to a job that would expose her to cold temperatures or expose her to picking up cold objects, do you have an opinion as to whether or not her condition would be aggravated by that exposure?
>
> A  It would most certainly be aggravated.

In addition, employer's expert, Dr. Caplan, diagnosed claimant as having progressive systemic sclerosis, possible CREST syndrome and stated that claimant has had Raynaud's phenomenon for a period of twenty years. He stated further that Raynaud's symptoms are initiated by exposure to cold and that claimant cannot perform her functions as a meat wrapper even if wearing warm clothing and gloves, because such covering may not eliminate cold exposure.

The referee accepted the medical opinions and testimony of both Dr. Stupi and Dr. Caplan, which unequivocally established a causal connection between claimant's work conditions and the aggravation of her Raynaud's symptoms. However, the referee, as well as the Board on

---

3.  CREST is an eponym for a series of symptoms, the "C" standing for calcinosis; the "R" for Raynaud's; the "E" for esophageal dysfunction; the "S" for sclerodactyly; and the "T" for telangiectasia.

appeal, erroneously concluded that claimant had to prove a causal connection between her workplace conditions and her underlying disease (scleroderma). This simply is not the current status of the law. *Pawlosky.*

The Pennsylvania Supreme Court, in a case decided after *Pawlosky,* stated that:

> [i]t is incredible that the lower tribunals would deny compensation because they perceived appellant's work-related injury to have aggravated a pre-existing non-work related condition. We insist that such lingering notions be finally laid to rest. Equally incredible is the conclusion of the lower tribunals that, because appellant's symptoms had disappeared ... and her condition had 'normalized,' she was not totally disabled and could not, therefore, recover compensation. This conclusion is absurd, and flies in the face of the substantive law.... [I]t is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured.

*Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works),* 515 Pa. 315, 328–29, 528 A.2d 580, 587 (1987) (footnote and citation omitted). Based on the evidence presented and the factual findings of the referee, we must conclude that claimant has met her burden of showing a job-related aggravation of a pre-existing disease and, therefore, is entitled to an award of workmen's compensation.

Accordingly, the Board's decision is reversed, and this matter is remanded to the Board to be further remanded to the referee for a determination of benefits.

### ORDER

AND NOW, this 12th day of March, 1992, the decision and order of the Workmen's Compensation Appeal Board is reversed. This matter is remanded to the Board to be

330

further remanded to the referee for a determination of benefits.

Jurisdiction relinquished.