# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Terrinoni, : 
          Petitioner : 
           : 
       v. : No. 1353 C.D. 2016
           : Submitted: December 9, 2016
Workers' Compensation Appeal : 
Board (Wawa, Inc.), : 
          Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**         **FILED: April 4, 2017**

Michael Terrinoni (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ) that denied his claim petition in which Claimant alleged he suffered an aggravation of his lower back condition. Claimant primarily challenges the bases for the WCJ's credibility determinations. Upon review, we affirm.

## I. Background

Claimant worked for WAWA, Inc. (Employer) as a "CIP" (or "clean in place") receiver. WCJ's Op., 9/4/15, Finding of Fact (F.F.) No. 7(a). In September 2012, Employer issued a notice of temporary compensation payable (NTCP) for an August 2012 injury described as an "acute left low back strain" that

occurred when Claimant "twisted" in order to connect a hose to a tank. F.F. No. 2. The NTCP subsequently converted to a notice of compensation payable.

In January 2013, Employer issued a notification of suspension or modification effectively suspending Claimant's wage loss benefits as of January 22, 2013, because Claimant returned to work at earnings equal to or greater than his pre-injury earnings.

In January 2015, Claimant filed a claim petition, alleging that after his return to work, he sustained a new injury to his low back on July 18, 2013, in the nature of an aggravation. He sought ongoing indemnity benefits as of December 2013, as well as payment of his medical bills and attorney fees. Employer filed an answer denying the material allegations. A hearing ensued before a WCJ.

At the hearing, Claimant testified he worked for Employer as a CIP receiver. His job involved hooking up different line circuits to milk silos in order to clean the silos. In August 2012, while hooking up the supply line to wash a silo, Claimant experienced pain in his leg and the left side of his back. Claimant missed one day of work and then returned to light duty. Thereafter, in January 2013, Claimant returned to a full-duty position, which included cleaning silos and making tea and chocolate and strawberry milk. This position required him to lift and pour 25 and 50 pound bags of mix into the mixers. Claimant testified that his pain gradually became worse while performing this job. He continued to perform his full duty job until July 2013, when his physician restricted him to light duty work. Claimant continued to perform light duty work until he underwent surgery

2

in December 2013. He has not worked since that date. Claimant testified that he underwent a second surgery in February 2014. Claimant further testified that he did not feel capable of returning to work on a full-time basis in any capacity because he continued to experience significant leg pain.

In support of his claim petition, Claimant presented the deposition testimony of Robert Sing, D.O. (Claimant's Physician), who is board-certified in family practice, sports medicine and emergency medicine. Claimant's Physician began treating Claimant in July 2013. Based on Claimant's history and physical examination, as well as a review of Claimant's medical records, Claimant's Physician diagnosed lower back pain and left piriformis syndrome with associated left sciatica, which, he opined, was related to Claimant's August 2012 work injury. Claimant's Physician noted Claimant underwent two surgeries for his injury, and his condition did not improve. Based on an MRI, Claimant's Physician opined Claimant developed a lumbar disc herniation as a result of his return to full duty work with an already injured back. He further opined that Claimant's August 2012 work injury was a substantial, contributing factor to his need for surgery in 2013. Claimant's Physician explained his current diagnoses were failed lumbar surgical syndrome, status post fusion, status post L5-S1 disc herniation, and left S1 radiculopathy with reflex changes and left piriformis syndrome with associated lumbar strain and sprain. Claimant's Physician testified Claimant's injury began in August 2012 and progressed over the following year-and-a-half until the December 2013 surgery through over-utilization, which was required for his job description. Claimant's Physician opined Claimant is not capable of performing his regular job,

3

but he could perform sedentary work with significant restrictions on lifting, pulling, pushing, and nothing repetitive in the upper and lower extremities.

Claimant also submitted the deposition testimony of Christian Fras, M.D. (Claimant's Orthopedist), a board-certified orthopedic surgeon, who began treating Claimant in November 2013. Based on a history, a physical examination and his review of one of Claimant's MRI studies, Claimant's Orthopedist opined Claimant showed evidence of symptomatic lumbar disc herniation and radiculopathy. Claimant's Orthopedist subsequently reviewed a November 2013 MRI study, and he opined Claimant had a disc herniation at L5-S1. In December 2013, Claimant underwent an L5-S1 laminectomy and discectomy, as well as an L5-S1 fusion. A subsequent MRI showed that a bone graft that was placed in the disc space during surgery became displaced and was in the spinal canal pressing on the nerves. As a result, Claimant underwent a second surgery in February 2014. Claimant's Orthopedist's diagnoses were lumbar disc herniation and an aggravation of lumbar degenerative disc disease. He opined Claimant's August 2012 injury was a substantial, contributing factor to his condition. Claimant's Orthopedist further opined Claimant was not capable of working full capacity, but he could work in a sedentary to light-duty position. Claimant's Orthopedist opined Claimant could return to work initially on a part-time basis to determine if he is able to tolerate the work.

Claimant also presented the deposition testimony of Scott Sexton, M.D. (Dr. Sexton), who performed an independent medical examination of Claimant in August 2013. Based on the records he received, the examination he

performed and the history Claimant provided, Dr. Sexton opined Claimant suffered left hip piriformis syndrome and left hip meralgia paresthetica, which he attributed to the August 2012 work injury. Dr. Sexton acknowledged his diagnoses were based primarily on Claimant's subjective complaints.

In opposition to the claim petition, Employer submitted the deposition testimony of Richard Schmidt, M.D. (Employer's Orthopedist), who is board-certified in orthopedic surgery. Employer's Orthopedist examined Claimant in July 2014 at which time he obtained a history. Employer's Orthopedist opined that Claimant sustained a left thigh and low back strain as a result of the August 2012 injury. This diagnosis was based on the history Claimant provided, the fact that the MRI studies done after the event showed no evidence of a disc herniation and upon Employer's Orthopedist's physical examination of Claimant. Employer's Orthopedist testified he had the opportunity to compare Claimant's September 2012 MRI with Claimant's November 2013 MRI side-by-side, and he testified that the studies were identical. He further testified that he observed no indication that Claimant sustained a disc herniation at work after August 22, 2012. As such, he would not have performed surgery on Claimant. Assuming Claimant had a disc herniation, Employer's Orthopedist opined Claimant fully recovered and the most recent MRI (from June 2014) showed no evidence of a disc herniation.

Additionally, in September 2014, Employer filed a termination petition, and Claimant filed a review petition seeking to expand the description of the injury. Ultimately, in June 2015, the WCJ amended the description of

5

Claimant's work injury to include a left thigh strain, and the WCJ terminated benefits as of July 30, 2014.[1]

Thereafter, in September 2015, the WCJ issued a decision denying Claimant's January 2015 claim petition (alleging a low back aggravation injury in July 2013), the decision directly at issue here. In particular, the WCJ rejected Claimant's testimony as "less than credible" based on his demeanor and because his testimony was inconsistent with the opinion of his medical expert, Claimant's Orthopedist, regarding Claimant's ability to return to sedentary to light duty work. F.F. No. 16(a). The WCJ also rejected Claimant's Orthopedist's testimony, noting that Claimant's Orthopedist did not review the film of the MRI performed in 2012, and unlike Employer's Orthopedist, he did not perform a side-by-side comparison of the MRI performed in 2012 and the MRI performed in 2013, and Claimant's Orthopedist could not specify when Claimant's disc herniation may have occurred. The WCJ also noted that Claimant's Orthopedist did not review Claimant's job duties, and Claimant did not report any incident other than the August 2012 work injury. Therefore, the WCJ found Claimant's Orthopedist's opinion testimony was speculative.

In addition, the WCJ rejected the testimony of Claimant's Physician, noting his testimony was contrary to established findings and credibility determinations made by the WCJ in his decision on the review and termination petitions. Additionally, the WCJ accepted the testimony of Dr. Sexton only to the

---

[1] Claimant's appeal of the review petition/termination petition decision, which pertained to the original "acute left low back strain" injury of August 2012, is currently pending before this Court at Docket No. 1792 C.D. 2016.

6

extent that he opined Claimant's 2012 MRI was normal, and, therefore, there was no need to perform surgery on Claimant's lumbar spine and no need for ongoing medical treatment. However, the WCJ rejected Dr. Sexton's opinion concerning his diagnoses of left hip piriformis syndrome and left hip meralgia paresthetica because the WCJ previously rejected those opinions in his prior decision on the review and termination petitions in which the WCJ determined Claimant's August 2012 injury was limited to a left thigh strain and a lower back strain. Finally, the WCJ credited Employer's Physician's opinion, noting he was the only orthopedic surgeon to view and compare Claimant's 2012 and 2013 MRI films.

Based on these findings and determinations, the WCJ denied Claimant's claim petition. In particular, the WCJ concluded Claimant did not meet his burden of proving he sustained a work injury on July 18, 2013, or that his work activities up until that date aggravated his August 2012 work injury. Claimant appealed to the Board, which affirmed.

More specifically, the Board determined that, based on the WCJ's credibility determinations, Claimant could not meet the burden of proof on his claim petition. The Board also rejected Claimant's argument that the WCJ's summary of the evidence contained substantial omissions, inconsistencies, and instances in which testimony was taken out of context. In so doing, the Board noted the WCJ was only required to make critical findings of fact on all issues necessary for appellate review, which the WCJ did here. Claimant now petitions for review to this Court.

7

## II. Issues

On appeal,[2] Claimant argues the Board did not identify the correct standard of review, which required it to set aside the WCJ's decision where the WCJ could not logically reach the conclusion he did based on the evidentiary record as a whole. More specifically, Claimant asserts the Board did not recognize that: (1) the WCJ's decision, when considered in conjunction with the evidence as a whole, represented a capricious abuse of fact-finding authority; and, (2) the WCJ's credibility determinations were based on an improper and illogical scheme. Claimant's argument relates solely to the bases for the WCJ's credibility determinations; he does not clearly challenge the remainder of the WCJ's factual findings. See Pet'r's Br. at 11 ("In the present case, [C]laimant agrees that the WCJ's summary of evidence will reflect the excerpts of testimony related in his [d]ecision do exist - albeit often out-of-context.").

## III. Discussion

At the outset, we note, as the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight ...." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id.

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

"It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

A capricious disregard only occurs when the WCJ deliberately ignores relevant, competent evidence. Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.), 851 A.2d 997 (Pa. Cmwlth. 2004). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137, 144 (Pa. Cmwlth. 2004). "[W]here there is substantial evidence to support [a WCJ's] factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478, 487 n.14 (Pa. 2002) (emphasis added).

In addition, to satisfy the reasoned decision requirements of Section 422(a) of the Act,[3] a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). When conflicting evidence is presented, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. Daniels. The WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection. Id. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." Dorsey, 893 A.2d at 196 (citation omitted).

Further, a WCJ may base a credibility determination solely on a witness's demeanor when the witness testifies live before the WCJ. Daniels. However, "[w]here medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." Dorsey, 893 A.2d 194. To allow effective appellate review, the WCJ must articulate an objective basis for the credibility determination. Id. at 194-95. Although there are countless objective factors that may support a credibility determination, these factors must be identified and enunciated. Id.

---

[3] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §834.

Nevertheless, "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." Id. at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." Id.

In a proceeding on a claim petition, the claimant bears the burden of establishing that the injury, aggravation or exacerbation was sustained during the course of employment and that a causal connection exists between his work and the disabling injury. Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ. & PMA Grp.), 942 A.2d 939 (Pa. Cmwlth. 2008). If the causal connection is not obvious, a claimant is required to present unequivocal medical testimony. Povanda v. Workmen's Comp. Appeal Bd. (Giant Eagle Mkts., Inc.), 605 A.2d 478 (Pa. Cmwlth. 1992).

Here, the WCJ made the following credibility determinations:

a. This [WCJ], having had the opportunity to observe Claimant and his demeanor when he testified at the … hearing, finds the overall testimony of Claimant to be less than credible in the instant dispute. In this matter, Claimant submitted the LIBC-750 and LIBC-760 to Employer asserting that he was not 'self-employed' at any time while receiving workers' compensation benefits and that his condition was 'about the same[.]' (Defendant Exhibit 06). There are two issues in the context of the instant litigation that are troubling to this [WCJ]. The first goes to the overall veracity of Claimant. Here, Claimant acknowledged that he had, as far back as 2009, been attempting to start a business (Claimant Exhibit 05 at 32), and during the course of the proceedings, Employer submitted into evidence an 'Independent Associate Agreement' Claimant had executed with TVC Marketing Associates, Inc.

11

(Defendant Exhibit 04) as well as another printed web page relating to Claimant concerning another venture Claimant was trying. (Defendant [Exhibit] 07). Although Claimant asserted that he made no income from these ventures, Claimant testified that when he filed his tax returns, he claimed deductions for certain expenses related to the same. (Claimant Exhibit 05 at 33). To this [WCJ], these facts are inconsistent, i.e., an assertion to Employer that one is not self-employed and a claim to the Internal Revenue Service that there are business deductions, i.e., a computer and writing off a home office. In the mind of this [WCJ], the foregoing inconsistency was bothersome when weighing the general credibility of Claimant. Second, in the context of the instant Claim Petition where Claimant is asserting that on or about July 18, 2013 he suffered an aggravation of the 2012 work injury, i.e., a new injury, Claimant's representation on the LIBC forms that his condition was 'about the same' appeared to this [WCJ] to be inconsistent with the allegations in the present litigation. An additional factor that was weighed by this [WCJ] as to Claimant's credibility included Claimant's assertion that he was not sure he could return to work in a job that involved answering phones. (Id. at 52). In the view of this [WCJ], the foregoing assertion was in stark contrast to the testimony of [Claimant's Orthopedist], one of Claimant's own medical experts who testified that Claimant was able to work in a sedentary to light duty capacity initially part time and then progressing to full time. (Fras [Dep.] at 31 -32). Again, to this [WCJ], the assertion of Claimant seemed, at best, inconsistent with the opinion of his own medical expert, and at worst, an embellished representation made to this [WCJ] as to the extent his alleged ongoing disability, if any. Given the foregoing factors, this [WCJ] rejects the testimony of Claimant where such testimony conflicts with or is material[ly] different from any of the other witnesses who testified in this matter. Specifically, the testimony of Claimant is rejected as less than credible and not reliable.

b. This [WCJ], having carefully considered and reviewed the deposition testimony of [Claimant's Orthopedist], in

12

the context of the Claim Petition finds the testimony and opinions of [Claimant's Orthopedist] to be competent, but less than credible or persuasive in the instant dispute. The diagnosis that [Claimant's Orthopedist] made, at least as of the last visit he had with Claimant during November 2014, was lumbar disc herniation and aggravation of lumbar degenerative disc disease and that the August 22, 2012 work event was a substantial contributing factor to these conditions and that Claimant's return to work caused the change in MRI findings. In the view of this [WCJ], it appeared that [Claimant's Orthopedist] placed significant weight upon an apparent change between MRI findings from 2012 and 2013. However, there is no indication that the radiologist who performed the 2013 MRI made any comparison with the 2012 MRI as did [Employer's Orthopedist] and therefore there was no comment in the 2013 report of any comparison changes. Further, unlike [Employer's Orthopedist], [Claimant's Orthopedist] did not make a side by side comparison between the 2013 and the 2012 MRIs. He testified that he had never seen the film from the 2012 MRI. When weighing the testimony as a whole, this [WCJ] weighed the fact that even [Claimant's Orthopedist] acknowledged that two different radiologists may interpret the same MRI differently. Moreover, even [Claimant's Orthopedist] acknowledged that there are scenarios where he disagreed with the reading and/or interpretation made by a radiologist of MRI findings. He even called into question the accuracy of the 2012 MRI report and findings without having actually seen the films and having only seen the report the day of his deposition. Another factor that this [WCJ] weighed when finding the testimony and opinions of [Claimant's Orthopedist] to be less than credible, is his acknowledgement that he was simply not able to indicate any particular date or time that the herniation in Claimant's low back may have occurred. All that [Claimant's Orthopedist] could state is that this condition occurred sometime after August 22, 2012 and that it was associated with Claimant's light duty work. Yet, it appears that all of the Doctors who testified in this matter agreed that the September 2012 MRI was normal. And as such, it is clear that the purported herniation did not

occur between August 22, 2012 and the date that the first MRI was done. [Claimant's Orthopedist] went on to acknowledge that he had no employment records for Claimant and he agreed that nowhere in his reports did he ever discuss explicit details of Claimant's job duties. (Fras [Dep.] at 43, 46). In addition, [Claimant's Orthopedist] agreed that an intake form completed by Claimant even as late as June 5, 2014 did not indicate that Claimant had any other incidents or injuries at work other than the August 22, 2012 incident. (Fras [Dep.] at 47-50). Finally, in this regard, [Claimant's Orthopedist] acknowledged that in none of his reports was there any indication or statement made by Claimant in connection with questions he may have posed during visits that there was any other incident or accident than the August 22, 2012 event. In the view of this [WCJ], the opinion of causation between Claimant's work and the diagnosis proffered by [Claimant's Orthopedist] is too speculative to support Claimant's burden of proof, i.e., the opinion of [Claimant's Orthopedist] amounts to a statement that Claimant was working between date A and date B and therefore the injury must have occurred sometime between these two points in time, but one cannot say when. In the view of this [WCJ], this is simply not a credible opinion.

c. This [WCJ], having carefully considered and reviewed the deposition testimony of [Claimant's Physician], in the context of the Claim Petition finds the testimony and opinions of [Claimant's Physician] to be competent, but less than credible or persuasive in the instant dispute. Here, [Claimant's Physician] opined that the August 22, 2012 work event was a substantial contributor to the subsequent surgery. This opinion is simply not credible, especially in light of the normal MRI that was performed shortly after that event. In addition, [Claimant's Physician] also opined that Claimant's ongoing work from January 2013 to July 2013 was also a substantial contributing factor to Claimant's need for the December 10, 2013 surgery. This opinion is likewise not credible given the previously [sic] judicial credibility determinations made by this [WCJ] in a Decision and Order circulated on June 29, 2015 pertaining to the

14

August 22, 2012 injury under Dispute DSP-4082052-3 and this [WCJ's] review again in this matter of the testimony and opinions proffered by Dr. Sexton. (See Judge Exhibit O1). This [WCJ] previously found the testimony and opinions of Dr. Sexton credible that as of August 2013 there was no role in operating on someone's normal spine. As such, the opinion of [Claimant's Physician] that surgery was necessitated by a combination of the August 22, 2012 work event and Claimant's work activities between January 2013 and July 2013 are contrary to a previously litigated matter where this [WCJ] made specific findings of fact and credibility determinations. Likewise, the opinion of [Claimant's Physician] that the nature of Claimant's August 22, 2012 injury was 'in actuality … a herniated disk all along' is not credible and contrary to prior judicially determined facts. (See Sing [Dep.] at 33). Finally, the fact that [Claimant's Physician] had never, before his January 6, 2015 deposition expressed the opinion or explanation that it was a combination of the original August 22, 2012 injury and Claimant's return to work was the cause of Claimant's diagnosis as of January 6, 2015 and that [Claimant's Physician] somehow 'discovered' this when preparing for the deposition is, in the view of this [WCJ] less than a credible utterance. Given these factors, this [WCJ] rejects the testimony and opinions of [Claimant's Physician] to the extent that they conflict with or are materially different from the opinions expressed by [Employer's Orthopedist].

d. This [WCJ], having carefully considered and reviewed the deposition testimony of [Dr. Sexton] in the context of the Claim Petition finds the testimony and opinions of Dr. Sexton to be competent, but only credible in part. Specifically, this Judge credits the opinions expressed by Dr. Sexton as to the fact that Claimant had a normal MRI of the lumbar spine from 2012 (Sexton [Dep.] at 10 -12) and there was also a normal bone scan from December 12, 2012. This fact comports with the comments of [Employer's Orthopedist] and [Claimant's Orthopedist] that the earlier MRI from September 2012 of the low back was read as normal. (See Schmidt [Dep.] at 18 and Fras [Dep.] at 28). In light of this, this [WCJ] credits the

15

opinion of Dr. Sexton that, at least as of the date he evaluated Claimant, he saw no role in operating on someone's normal lumbar spine and that no ongoing medical care was needed. (Sexton [Dep.] at 14). This [WCJ] did not find the opinion of [Dr. Sexton] concerning his diagnosis of left hip piriformis syndrome and left hip meralgia paresthetic to be particularly credible in this dispute, especially in light of the fact that this [WCJ] had rejected this testimony and opinion in a Decision and Order circulated by this [WCJ] on June 29, 2015 with respect to the August 22, 2012 injury date under dispute number DSP-4082052-3. (Judge Exhibit 01). In that dispute relating to the August 22, 2012 injury, this [WCJ] specifically found, as a fact, that the nature of the August 22, 2012 injury was limited to a left thigh strain and a lower back strain.

e. This [WCJ], having carefully considered and reviewed the deposition testimony of [Employer's Orthopedist], in the context of the Claim Petition finds the testimony and opinions of [Employer's Orthopedist] to be competent and credible. In the view of this [WCJ], the testimony and opinions expressed by [Employer's Orthopedist] were straight forward and unshaken upon cross examination. Here, [Employer's Orthopedist] was the only orthopedic surgeon who actually viewed the 2012 and the 2013 MRI films, made the comparison and testified that the films were identical, i.e., there had been no change in the interval. This [WCJ] read this testimony of [Employer's Orthopedist] in light of the admissions of [Claimant's Orthopedist] that not only can two radiologists read the same film differently, but even he had found scenarios where he would disagree with a radiologist's reading of a film. When weighing the credibility and persuasiveness of the various medical witnesses in this dispute, the 'side by side' comparison that [Employer's Orthopedist] did was, in the view of this [WCJ], more powerful in supporting his opinions and conclusions than the testimony of the other experts who testified in this dispute. Not unlike Dr. Sexton, [Employer's Orthopedist] credibly opined that he did not find an indication for the surgery done by [Claimant's Orthopedist]. [Employer's Orthopedist] credibly

16

explained why, in his opinion, someone who had actually done the surgery would not be better able to see a herniation than a doctor who had only seen /reviewed the MRI. (See Schmidt [Dep.] at 17). In addition, [Employer's Orthopedist] pointed to the normal clinical examination as well as a normal MRI from June 2014 to support his opinions. <u>Given these factors, this [WCJ] accepts the testimony and opinions of [Employer's Orthopedist] as the medical facts of this dispute</u>.

F.F. No. 16(a)-(e) (emphasis added).

Claimant challenges each of the above credibility determinations. He acknowledges that the WCJ set forth detailed reasons for his acceptance or rejection of each item of evidence. Considered in a vacuum, Claimant argues, each individual "reason" may seem valid. Pet'r's Br. at 11. Indeed, Claimant contends, even "observation and demeanor" based reasons were set forth, which are recognized as a valid exercise of the WCJ's authority. <u>Id.</u> However, Claimant asserts, it is the overall scheme of the WCJ's findings, in comparison to the record as a whole, and the overwhelming weight of the evidence, which render the decision erroneous. Claimant maintains that while no single error may cause this Court to reverse the WCJ's decision, the combination of errors taken together is what should be determinative. We disagree.

First, as to the WCJ's rejection of Claimant's testimony, because Claimant testified live before the WCJ, the WCJ was permitted to base his credibility determination regarding Claimant solely on Claimant's demeanor. <u>Daniels</u>. The WCJ did so here. F.F. No. 16(a). Moreover, the record supports the WCJ's additional reasons for rejecting Claimant's testimony.

17

To that end, as the WCJ found, the record discloses several inconsistencies in Claimant's case. First, as the WCJ explained, Claimant completed an "Employee Report of Wages and Physical Condition" Form (LIBC-750) and an "Employee Verification of Employment, Self-Employment or Change in Condition" Form (LIBC-760), in which he indicated he was not employed or self-employed at any time while receiving workers' compensation benefits. Certified Record (C.R.) Ex. D-6. Before the WCJ, Claimant acknowledged he attempted to start a business as far back as 2009, and Employer presented an "Independent Associate Agreement" Claimant executed with TVC Marketing Associates in 2014 as well as a computer printout from 2014 relating to another business venture attempted by Claimant. C.R. Exs. D-4 at 5-8, D-7; Reproduced Record (R.R.) at 75. Although Claimant asserted he generated no income from these undertakings, as the WCJ found, when asked if he ever filed business tax returns, Claimant responded: "No. The only thing I ever did with that business was claim the stuff that I was trying to get it running, like a computer, you know, like a --- we took the write off for a home office basically. That's all I ever did." R.R. at 76. Thus, as the WCJ found, these facts were inconsistent because, on the one hand, in November 2014, Claimant completed Bureau of Workers' Compensation (Bureau) Forms on which he indicated he was not employed or self-employed *at any time* while receiving workers' compensation benefits (despite receiving indemnity and/or medical benefits from August 2012 through July 2014), while, on the other hand, Claimant made a claim to the Internal Revenue Service that there were business tax deductions, *i.e.*, a computer and writing off a home office. F.F. No. 16(a).

18

Next, although Claimant filed the instant claim petition alleging he suffered an aggravation of his 2012 work injury in 2013, on the 2014 Bureau Forms identified above (which Claimant completed during the pendency of this claim petition), in response to a question on the forms inquiring whether Claimant's physical condition changed, Claimant wrote "about same." C.R., Ex. D-6. The WCJ deemed this response inconsistent with Claimant's allegations in the current litigation. F.F. No. 16(a).

Finally, the WCJ determined Claimant's testimony that he was "not sure" that he could return to a job that involved answering phones was inconsistent with Claimant's Orthopedist's opinion that Claimant could perform sedentary to light duty work beginning part-time and progressing into full-time employment, if tolerated on a part-time basis. Compare R.R. at 95 (Claimant's testimony) with R.R. at 202-03 (Claimant's Orthopedist's testimony). In short, because the record supports the WCJ's findings regarding these inconsistencies, we discern no error in these additional bases for the WCJ's rejection of Claimant's testimony.

Further, as to the WCJ's credibility determinations concerning the medical evidence, the record supports the WCJ's findings that:

- unlike Employer's Orthopedist, Claimant's Orthopedist did not undertake a side-by-side comparison of Claimant's 2012 and 2013 MRI films, R.R. at 198, 211;

- Claimant's Orthopedist was unable to identify any particular date or time that the purported low back disc herniation may have occurred, R.R. at 216;

19

- Claimant's Orthopedist acknowledged he had no employment records for Claimant, and he agreed that nowhere in his reports did he discuss the details of Claimant's job duties, R.R. at 208, 214, 217-18;

- Claimant's Orthopedist acknowledged that in none of his reports was there a statement from Claimant that there was any incident other than the August 2012 incident, R.R. at 221, 222-23;

- Claimant's Physician opined that the August 2012 work incident was a substantial contributing factor to Claimant's need for surgery despite the fact an MRI performed shortly after the incident was normal, R.R. at 140;

- although Claimant's Physician opined that Claimant's ongoing work from January to July 2013 was a substantial contributing factor to Claimant's need for a second surgery, that opinion was contrary to the WCJ's findings and credibility determinations in his June 2015 decision, WCJ Op., 6/29/15, F.F. No. 17(b);

- Claimant's Physician's opinion that Claimant's August 2012 injury was actually a herniated disc all along was contrary to the facts determined by the WCJ in his prior decision, WCJ Op. 6/29/15, F.F. No. 17, Concl. of Law No. 5;

- Dr. Sexton credibly opined Claimant's 2012 MRI of the lumbar spine and bone scan were normal, R.R. at 272, 274;

- Dr. Sexton credibly opined that, at least as of the date he examined Claimant, he saw no role in operating on someone's normal lumbar spine, R.R. at 274;

- Dr. Sexton's diagnoses of left hip piriformis syndrome and left hip meralgia paresthetic were not credible based on the WCJ's prior rejection of this testimony in his June 2015 decision, WCJ Op. 6/29/15, F.F. No. 17(b);

- Employer's Orthopedist's testimony was straightforward and unshaken on cross examination, C.R., Ex. D-1 (Deposition of Richard G. Schmidt, 6/10/15 (Schmidt Dep.)) at 7-29;

- Employer's Orthopedist was the only orthopedic surgeon who actually viewed the 2012 and the 2013 MRI films, made the comparison and testified the films were identical, *i.e.*, there had been no change in the interval, Schmidt Dep. at 16;

- Employer's Orthopedist credibly opined he did not find an indication for the surgery Claimant's Orthopedist performed, Schmidt Dep. at 17-18; and,

- Employer's Orthopedist pointed to the normal clinical examination as well as a normal June 2014 MRI to support his opinions, Schmidt Dep. at 15, 18.

In sum, because the record amply supports the WCJ's bases for his credibility determinations, we cannot disturb them. Clearly, the WCJ's decision satisfies the reasoned decision requirements of Section 422(a) of the Act, and the WCJ did not capriciously disregard the evidence Claimant presented.[4]

---

[4] Claimant also very briefly asserts that, even assuming the surgery he underwent was unnecessary, the WCJ capriciously disregarded his argument that unnecessary treatment is still compensable if it would not have been undertaken "but for" the work injury. He cites J.D. Landscaping v. Workers' Compensation Appeal Board (Heffernan), 31 A.3d 1247 (Pa. Cmwlth. 2011), in support. In J.D. Landscaping, this Court determined that a utilization review determination that certain medication prescribed to a decedent was unreasonable and unnecessary was irrelevant to determining whether the decedent's death, which occurred because of an overdose of the medication, was causally related to his work injury. In J.D. Landscaping, the WCJ determined that the decedent's death was causally related to an accidental overdose of pain medication that was prescribed for the decedent's work-related back injury. Unlike in J.D. Landscaping, the WCJ here *rejected* Claimant's medical evidence, which indicated that Claimant's August 2012 work incident and work thereafter, were substantially contributing factors to Claimant's need for surgery. F.F. Nos. 16(b), (c).

21

Nevertheless, Claimant cites Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Bensy), 651 A.2d 212 (Pa. Cmwlth. 1994), for the proposition that a WCJ's decision is erroneous where a "patchwork of findings together" results in credibility determinations that are illogical. Pet'r's Br. at 10. In Giant Eagle, this Court recognized that: "Where [a WCJ's] opinion is without a rational basis or scheme so as to be capricious, we are bound to reverse." Id. at 218. Noting that an opinion would rarely meet those criteria, this Court explained the particular circumstances under which the case arose:

> The [WCJ] failed to set forth any findings of fact with respect to the medical witnesses who testified. Instead, he inexplicably states that he finds the direct testimony of all of these witnesses as being not believable and not credible and picks and chooses as to the credibility of parts of testimony of other witnesses with no rhyme or reason. The [WCJ] found that he does believe the cross-examination testimony of Dr. Durning and Dr. Merkow, despite the fact that there are very few relevant facts contained in these portions of the testimony. In essence, we can make no sense of the patchwork of credibility findings as to portions of each individual's testimony. Not only do the [WCJ's] credibility findings make no sense, neither does his award: reinstatement of [the] [c]laimant's weekly benefits when none was requested; ordering the payment of some medical benefits without delineating which ones; awarding travel expenses without having any evidence to make that determination other than [the] [c]laimant's testimony that he wanted to be reimbursed for money spent travelling 20,000 miles to see Dr. Merkow. We believe the findings are so capricious that no reasonable person could have made such findings of fact or conclusions of law. While the Board attempted to mitigate by reversing some of the decision's more egregious errors, the findings tainted all aspects of the [WCJ's] decision. As such, we find the decision below, as well as the bases for that decision, to be generally not rational or intelligible.

22

Id. (footnote omitted).

The case presently before us is not akin to Giant Eagle. As explained above, the WCJ here provided sufficient reasons for his credibility determinations and those reasons are supported by the record. Further, the WCJ made detailed findings as to each witness' testimony. Ultimately, the WCJ considered the conflicting evidence, and he credited the evidence presented by Employer over that presented by Claimant. This is a proper function of the WCJ as fact-finder. A & J Builders. Thus, we reject Claimant's argument that the WCJ's opinion lacks a rational basis.[5]

---

[5] Similarly, Higgins v. Workers' Compensation Appeal Board (City of Philadelphia), 854 A.2d 1002 (Pa. Cmwlth. 2004), also cited by Claimant, is distinguishable. There, a WCJ denied a claimant's modification and reinstatement petitions seeking total disability benefits despite the fact the claimant presented the competent medical testimony of one physician who opined the claimant was totally disabled as well as a report of another physician who confirmed this opinion. The employer offered no medical evidence to rebut the opinions of the claimant's medical experts. This Court determined the WCJ's rationale for rejecting the claimant's medical testimony lacked record support, and the WCJ articulated no reason for rejecting the report of the claimant's other physician. Based on these clear deficiencies, we determined the WCJ's decision did not satisfy the reasoned decision requirement.

Here, unlike in Higgins, the parties presented conflicting medical evidence on the issue of whether Claimant sustained a new injury to his low back in July 2013, in the nature of an aggravation. The WCJ chose to credit the testimony of Employer's Orthopedist over that presented by Claimant's medical experts and properly articulated objective reasons for doing so, which are amply supported by the record. Therefore, Higgins is inapposite here.

23

Based on the foregoing, we affirm.[6]



ROBERT SIMPSON, Judge

Judge Cosgrove dissents.

---

[6] Claimant also asserts the Board capriciously disregarded his argument that his claim petition should have been consolidated with two other pending petitions relating to his August 2012 work injury (the termination and review petitions) in order to permit consideration of all evidence and arguments in the proper context and to avoid inconsistent outcomes. However, our review of Claimant's appeal to the Board reveals that Claimant did not raise this issue to the Board. R.R. at 390-95. Thus, it is not surprising that the Board did not address this issue in its opinion. As such, this issue is waived. See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.), 903 A.2d 94 (Pa. Cmwlth. 2006).

In any event, even if not waived, a WCJ's decision as to whether to consolidate related actions is discretionary, not mandatory. 34 Pa. Code §131.30(a) ("Where proceedings involve a common question of law or fact, the judge may consolidate the proceedings for hearing on all matters in issue, and may make any appropriate orders concerning the conduct of the proceedings to avoid any unnecessary costs or delay."). Here, the WCJ denied Claimant's oral motion to consolidate the proceedings on Claimant's claim petition with the proceedings on Employer's termination petition and Claimant's review petition because consolidation would delay the proceedings on Employer's termination petition. R.R. at 17. In his brief to this Court, Claimant offers no direct response to the WCJ's decision to deny his request for consolidation on this basis.

In addition, Claimant requests a remand for consideration of his claim petition by a different WCJ based on his argument above that the WCJ's decision contained "significant omissions" and that the WCJ "ignored inconsistencies" and showed a "misapprehension of the reasons why [C]laimant presented certain evidence." Pet'r's Br. at 26. To that end, Claimant again argues the WCJ's decision contains a "SCHEME of credibility determinations that are inconsistent with the overwhelming weight of the evidence and inescapably tainted by a distorted concept of the evidentiary record as a whole." Id. Because, as explained above, the WCJ adequately explained the bases for his credibility determinations and those bases are amply supported by the record, we reject Claimant's request for remand to a different WCJ.

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Terrinoni,                     :
              Petitioner       :
                          :
          v.                          :   No. 1353 C.D. 2016
                          :
Workers' Compensation Appeal          :
Board (Wawa, Inc.),                    :
            Respondent      :

## **O R D E R**

    **AND NOW**, this 4th day of April, 2017, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

                                        _____
                                        ROBERT SIMPSON, Judge